[No. 6531.]

## IN THE MATTER OF THE INHERITANCE TAX ON THE ESTATE OF ANDREW J. MACKY, DECEASED.

1. **Inheritance Tax—Nature—Subject of Imposition**—The tax imposed by §§ 21-41, of the Revenue Law of 1902 (Laws 1902, 50), is imposed upon the right to receive the bequest or inheritance, and not upon the estate, nor the power of the testator or donor to dispose of his estate.—(87-93)

2. **Exemption of State Institutions and Counties**—The state university is an institution of the state, supported by taxation; a legacy to the regents, to enable them to erect an auditorium, is impliedly exempt from taxation.—(97-99)

So of a legacy to a city or county for the erection of a hospital for the comfort of poor widows and orphan children. —(97)

*Appeal from Boulder District Court* — Hon. JAMES E. GARRIGUES, Judge.

Messrs. GIFFIN, ROWLAND & GIFFIN, for appellants.

Hon. W. H. DICKSON, attorney general, and Mr. S. H. THOMPSON, for appellees.

Sections 21 to 41, both inclusive, of the general revenue act of this state, passed in the year 1902, provides for the imposition and collection of what is denominated in the act, an inheritance tax. Section 21 is as follows:

"All property, real, personal and mixed, which shall pass by will or by the intestate laws of this state from any person who may die seized or possessed of the same while a resident of this state, or if decedent was not a resident of this state at the time of his death, which property or any part thereof shall be within this state or any interest therein or income therefrom, which shall be transferred by deed, grant, sale or gift made in contemplation of the death of the grantor or bargainor or intended to take effect, in-

possession or enjoyment after such death, to any person or persons or to any body politic or corporate in trust or otherwise, or by reason whereof any person or body politic or corporate shall become beneficially entitled in possession or expectation to any property or income thereof, shall be and is, subject to a tax at the rate hereinafter specified to be paid to the treasurer of the proper county for the use of the state, and all heirs, legatees and devisees, administrators, executors and trustees shall be liable for any and all such taxes until the same shall have been paid as hereinafter directed.    When the beneficial interests to any property or income therefrom shall pass to or for the use of any father, mother, husband, wife, child, brother, sister, wife or widow of the son or the husband of the daughter, or any child or children adopted as such in conformity with the laws of the state of Colorado, or to any person to whom the deceased, for not less than ten years prior to death, stood in the acknowledged relation of a parent, or to any lineal descendant born in lawful wedlock, in every such case the rate of tax shall be two dollars on every hundred dollars of the clear market value of such property received by each person, and at and after the same rate for every less amount; provided, that the sum of ten thousand dollars of any such estate shall not be subject to any such duty or taxes, and that only the amount in excess of ten thousand dollars shall be subject to the above duty or tax.    When the beneficial interests to any property or income therefrom shall pass to or for the use of any uncle, aunt, niece, nephew or any lineal descendant of the same, in every such case the rate of such tax shall be three dollars on every one hundred dollars of the clear market value of such property received by each person. In all other cases the rate shall be as follows: On each and every hundred dollars of the clear

market value of all property and at the same rate for any less amount; on all estates of ten thousand dollars and less, three dollars; on all estates of over ten thousand dollars and not exceeding twenty thousand dollars, four dollars; on all estates over twenty thousand dollars and not exceeding fifty thousand dollars, five dollars; and on all estates over fifty thousand dollars, six dollars; provided, that an estate in the above case which may be valued at a less sum than five hundred dollars shall not be subject to any such duty or tax."

By his will admitted to probate in the county court of Boulder county, Andrew J. Macky, after certain specific bequests, which need not be mentioned here, gave the sum of $50,000.00 to and for a hospital building and home to be built in the city of Boulder for the comfort of poor widows and orphan children, while sick and not able to care for themselves; provided, that the city of Boulder, or the county commissioners of the county of Boulder would maintain and support the said hospital and home, otherwise, the said $50,000.00 to be divided among certain legatees, as named in the will.

In the same instrument he devised the residuum of his estate, left after paying the specific bequests, legacies, debts and costs of administration, to the regents of the University of Colorado, located at Boulder, for a building to be known as an auditorium building and to be erected upon the university grounds. The estate was appraised as provided in the above mentioned sections, for the purpose of ascertaining the several amounts thereof subject to an inheritance tax, and after due allowance for all other matters, it was found that the residuary legacy to the regents of the university amounted to the sum of $217,270.00. The county court found that the bequests for the hospital and home and to the regents

of the university, were not subject to an inheritance tax. From this judgment of the county court an appeal was taken, on behalf of the state of Colorado, by the attorney general, to the district court of Boulder county, and that court found that the legacies for the home and to the regents were subject to an inheritance tax, under the law above mentioned, and the executor was ordered to pay to the state the sum of $16,305.14 as the inheritance tax due to the state on account of the two bequests. From this judgment of the district court, the regents and the executor have appealed to this court.

'After stating the facts as above,

Mr. Justice Musser delivered the opinion of the court:

It has been quite universally held, in our own state and elsewhere, that a tax of the nature of that imposed by the aforesaid sections of our revenue law, is not a tax upon property, but is a tax or excise upon the power or right of transmitting or receiving property, by will or under intestate laws.—*Brown v. Elder,* 32 Colo. 527; *United States v. Perkins,* 163 U. S. 625; *Magoun v. Illinois Trust Co.,* 170 U. S. 283; *Knowlton v. Moore,* 178 U. S. 41; *Strode v. Commonwealth,* 52 Pa. St. 181; *Eyre v. Jacob,* 14 Gratt. 422; *State v. Hamlin,* 86 Me. 495; *State v. Alston,* 94 Tenn. 674; *Minot v. Winthrop,* 162 Mass. 113; *Matter of Merriam,* 141 N. Y. 479; *In re Wilmerding,* 117 Cal. 281; *Gelsthorpe v. Furnell,* 20 Mont. 299; *State v. Dalrymple,* 70 Md. 294; *Kochersperger v. Drake,* 167 Ill. 122.

The parties concede that this is the law. The attorney general, on behalf of the state, contends that the tax imposed by our law is payable out of the estate; that it is a tax upon the power of a testator to dispose of his property by will, and that at the death

of the testator, his estate is divided into two parts, by operation of law, one part passing to the legatees and devisees, as provided in the will, the other to the state, in payment of the inheritance tax, and that no matter who the legatees or devisees may be, the state is entitled to this tax. On the other hand, counsel for appellants contend that the tax is imposed upon the right of the legatees or devisees to receive the property under the will; that it is payable by the legatees and devisees, as a tax, for the privilege of taking the property, and that in as much as the regents of the university, and the city and county of Boulder are public corporations, whose property is exempted from taxation, the exemption applies in this case, and the regents and the city or county of Boulder should be permitted to receive the legacies free from any inheritance tax.

What is the subject upon which the tax provided for in this part of our revenue law is imposed? Is it the right to dispose of or transmit property by will or under the intestate laws, or is it the right to receive property, by will or under the intestate laws? It is conceded that, if it is the former, then the judgment should be affirmed, for in that case, it is the right or power of Andrew J. Macky to dispose of his property by will, that is the subject of taxation. If it is the latter, then it is the right of the public corporations to receive the legacies, that is the subject of taxation, and the further inquiry must then be made as to whether or not such corporations are exempt from the inheritance tax, or rather, whether the right of such corporations to receive the legacies is a subject of taxation.

In *Knowlton v. Moore, supra,* Mr. Justice White reviewed the history of taxes of the nature of those imposed by our law, and applied to them the term ''death duties,'' as they are called in England, to in-

dicate their generic nature, for it is to be remembered that, fundamentally, it is the power to transmit, or the right to receive property by death, that is the subject levied upon by all such taxes. As is shown by Mr. Justice White, the oldest form of death duty in England was a probate duty, established in 1694. It was a fixed tax upon the sum of the personal estate, payable upon the grant of letters of probate, and was treated as an expense of administration. In 1780 there was added a tax known as a legacy tax, and collected by means of a stamp fixed to the receipt of the legatee. The burden of this duty fell on the legatee, unless, in case of a will, the testator otherwise directed.—4 Enc. Laws of England 125. In 1853 the two forms of taxes aforesaid were supplemented by a tax called a succession duty, which was levied upon real estate passing wholly or partly because of death, and on personalty not subject to the legacy tax. This was akin to the legacy tax, and borne by the successor, *i. e.*, the beneficiary under the succession, *ibid.* 129.

In 1894 an act called the Finance Act, provided an estate duty, which took the place of the probate duty, and like the latter is payable out of the general residue of the estate, *ibid.* 130-135. Speaking with reference to this estate duty, it is said in Hanson's Death Duties, p. 63:

"The new duty imposed by the Finance Act, and called estate duty, as has been said above, supersedes probate duty; but the key to the construction of the Finance Act lies in remembering that the new estate duty, although it is leviable on property which was left untouched by probate duty, such as real estate, yet is in substance of the same nature as the old probate duty. What is taxed is not the interest to which some person succeeds on a death, but the interest which ceased by reason of the death. Unless

this principle is kept clearly in view, the mind is constantly tempted by the wording of the act to revert to principles of succession duty which have no real connection with the subject.''

Here then are presented two classes of death duties. The one, being the taxation of the interest which ceased with death, and which is upon the transmission of property. Into this class fall the probate duty and the estate duty, the burden of which is borne by the estate. The other class being the taxation of the interest to which a person has succeeded on the death, and which is upon the right to receive. Into this latter class fall the legacy and succession taxes, the burden of which is borne by the person beneficially interested, the legatee or successor in interest.

In 1797 our congress imposed a legacy tax, which continued in force until 1802. The tax was collected by means of stamps placed upon the receipts given for the payment of the legacies or distributive shares of personal property, and was charged upon the legacies or distributive shares, and not upon the residuum of the personal estate. In 1862 a legacy tax was again imposed, like in character to that of 1797, and in the same act a probate duty was levied proportioned to the amount of the estate. In 1864 an act was passed increasing the rate of the probate duty on the whole estate, and the legacy tax on each particular legacy or distributive share, and adding a duty on the passing of real estate.

''Thus it came to pass that the system of death duties prevailing in England and that adopted by congress—leaving out of view the differences in rates, and the administrative provisions—were substantially identical and of a threefold nature, that is, a probate duty charged upon the whole estate, a legacy duty charged upon each legacy or distributive share of personalty, and a succession duty charged

against each interest in real property."—*Knowlton v. Moore, supra,* 51.

It is now apparent that if the position of the state in the present case is proper, then the death duties imposed by our statute must be placed in that class which Hanson says is a taxation upon the interest which ceased with death, and, in which we have seen, fall the probate and estate duties of England, and the United States, and, as we shall presently see, transfer taxes in the nature of those imposed by the New York act of 1892, and the burden is on the estate. On the other hand, if the position of the appellants is the correct one, then the death duties imposed by our law must be placed in that class, that is, a taxation of the interest to which some person succeeds on the death, in which the burden is borne by the one benefited, and which we have seen embraces legacy and succession duties, and must perforce include inheritance and collateral inheritance taxes; for an inheritance is an interest to which a person succeeds upon the death of an ancestor intestate. Hence we are led from a contemplation of the generic, to a discussion of the specific, nature of the death duties levied by the sections of our revenue act under consideration.

While the particular appellation employed by a legislature in designating a subject of legislation is not always indicative of its specific nature, yet in this instance the fact that our legislature called the tax an inheritance tax is of much significance, in view of the fact that from the very language of the sections no other term could be used that would more aptly indicate the specific nature of the tax. The statute provides that interests, whether in real or personal property, passing by will or under the intestate laws, shall be subject to the tax. A tax upon an interest in personal property passing by will is a legacy tax;

the tax upon an interest in real property, whether passing by will or under the law of descent, could be aptly termed a succession tax; the tax imposed upon the interests obtained by lineal descendants might be termed a lineal inheritance tax; and that upon collateral ones, a collateral inheritance tax. No term, sufficiently comprehensive could be more aptly employed to embrace a tax upon the right to acquire interests in real and personal property, passing by will to devisees or to legatees, or, under the statute of descents and distributions, to heirs whether lineal or collateral, than the term inheritance tax. When we further consider the fact that the sections of our revenue act, dealing with this tax, are almost literal copies of an Illinois act entitled, "An act to tax gifts, legacies and inheritances, etc.," it strongly appears that the legislature, by the term inheritance tax, intended that term to be expressive of the specific nature of the tax, and that it should operate upon interests, to which persons succeeded upon death, as described by Hanson.

Take the language of section 21, copied above. What property does it make subject to a tax? All property which shall pass by will or by the intestate laws of the state. Not any portion of the decedent's estate that may be used in the payment of debts, or costs of administration, for that does not pass. Not all the property of the decedent, but all the property of the decedent which shall pass. Again if any interest "shall be transferred by deed, grant, sale or gift," in contemplation of death, to take effect in possession or enjoyment after such death, it is subject to the tax. Plainly the interests subjected to a tax are those to which some persons have succeeded. Who are made liable for the tax? The statute answers: "and all heirs, legatees and devisees, administrators, executors and trustees shall be liable for

any and all such taxes until the same shall have been paid as hereinafter directed." Who are these "heirs, legatees and devisees, administrators, executors and trustees," upon whom the burden is cast? They are the persons who have succeeded to the property, the administrators and executors, for the purpose of administration, trustees for the carrying out of any trusts, and the heirs, legatees and devisees, at the final distribution, or it may be at the death, so far as real estate is concerned. It might be said right here, that administrators and executors succeed to the whole estate, but in the very next sentence, and in the remainder of the section, the statute again limits the portion subject to the tax, and classifies the same for the purpose of fixing the rate and measuring the amount of the tax. What is that classification, and what property and persons are its subjects? The property embraced in each of the classes is the beneficial interest in any property or income therefrom, which shall pass to some person included in any group. Here again is property which has passed. Who are the persons that are affected? They are the lineal and collateral heirs and strangers in blood of the decedent. Again it is those who have succeeded to the property. We could thus proceed through other sections, but enough has been said to clearly show that it is only property that has passed by will or descent that is charged with the tax, and it is upon those who succeed to the beneficial interests that the burden of the tax is cast.

Adverting to some of the decisions, there is found the case of *U. S. v. Perkins, supra,* which appears to hold that the tax in question there was a tax upon the right to dispose of property, and the state in this case lays much stress upon that decision.

It appears in the *Perkins case* that one Merriam bequeathed all his estate to the United States govern-

ment.   The surrogate's court fixed a tax to be paid
by the estate.   The matter finally reached the court
of appeals, where it was determined that the tax
should be paid.—*In re Merriam,* 141 N. Y. 479.   The
matter was brought to the supreme court of the
United States.   The tax was assessed under a law of
1892.   Section 1 of the act provides: ''A tax shall
be and is hereby imposed upon the transfer of any
property, real or personal, of the value of five hun-
dred dollars or over,   *   *   *   to persons or cor-
porations not exempt by law from taxation, on real
or personal property in the following cases:''   The
first case is, when the transfer is by will or by the
intestate laws of the state from any person dying
seized or possessed of the property, while a resident
of the state.   The second case is, when a transfer is
by will or intestate law, of property within the state,
and the decedent was a nonresident.   The third case
is, when a transfer is of property, by deed, grant,
bargain, sale or gift, made in contemplation of death.
The court of appeals of New York determined that
this tax limited the power of testamentary disposi-
tion, which is equivalent to saying, that it was a tax
upon that power.   The supreme court of the United
States in the *Perkins case,* followed the holding of
the New York court that the tax was under the law
of 1892 and not under a previous one, and seemed to
base its opinion upon the law of 1892.   This law is,
as it purports to be, a tax upon the right to transfer
property, and while it is of the same generic nature
as the Colorado law, being a death duty, it is not of
the specific nature.   If, as the court of appeals said,
this tax limits the power of testamentary disposition,
it is to be placed in that class spoken of by Hanson,
as being a tax upon the interest that ceased by death.
Hence the opinion in the *Perkins case,* which seems
to accept the view of the court of appeals, is not fairly

authority here. It must be borne in mind that the
decisions are numerous wherein the nature of death
duties are discussed generically only. Such deci-
sions have in view the idea that the tax is not one on
property, and to sustain that view treat the subject
in a more general way, and hold that it is the right to
dispose of or receive property by death that is the
subject of taxation, without intending to be specific
in the case. No decision has been pointed out to us
wherein is discussed the specific nature of an in-
heritance or succession tax, as distinguished from
that of a probate, estate or transfer tax, but that it is
held that an inheritance or succession tax, is on the
right to receive the property.

In *State v. Hamlin, supra,* speaking of a tax
under a statute substantially like ours, the supreme
court of Maine, at page 504, said:

"The tax under this statute is, once for all, an
excise or duty upon the right or privilege of taking
property, by will or descent, under the law of the
state."

In *State v. Alston, supra,* speaking with refer-
ence to a tax imposed under an act providing for a
collateral inheritance and succession tax, the supreme
court of Tennessee, at page 680-1, said:

"It must be borne in mind that the tax is not
upon the property, but the right or privilege of ac-
quiring it by succession. It is a condition upon which
the person may take the estate of a deceased relative
by inheritance or testator by his will. It is a reten-
tion by the state of a part of a deceased person's
property which the state may take to meet its neces-
sities, and which in certain cases it may take *in toto,*
as in cases of escheated property. It is not a tax
upon the right of alienation, but on the privilege of
receiving by inheritance or will or otherwise, at the
death of a former owner."

In *State v. Ferris,* 53 O. St. 314, the court, speaking of an inheritance tax under a statute, very similar to ours, at page 325, said:

"Properly understood, it is not the right to transmit, but the right and privilege to receive, that is taxed."

The court then proceeds to say that the right to dispose of property is not so clearly taxable, and then continues:

"But when the right to receive the property is considered, it is clear that the right is distinct and separate from the property itself, and the state may tax this right to receive property, and this is so whether the property is disposed of by the owner during his life time, or at his death."

And on page 326, the court said:

"As a majority of the court are of opinion that it is not a tax on property, but upon the right to receive property, the statute must, as to this point, be sustained."

In *Gelsthorpe v. Furnell, supra,* the supreme court of Montana, discussing an inheritance tax law, very similar to ours, at pages 303-4, said:

"The better view, as laid down by the authorities, is that a collateral inheritance or succession tax is a duty or bonus exacted in certain instances by the state upon the right and privilege of taking legacies, inheritances, gifts and successions passing by will, by intestate laws, or by any deed or instrument, made *inter vivos,* intended to take effect at or after the death of the grantor. The burden or the tax is not imposed upon the property itself, but upon the privilege of acquiring property by inheritance. In nearly all inheritance tax laws the statutes provide for appraising the property to be inherited, but the object of such valuation is not to tax the property itself. It

is to arrive at a measure of price by which the privilege of inheriting can be valued.''

And on page 305:

''The most exact rule is that which regards the tax as upon the right to receive property, rather than the right to dispose of it.''

In 1895 the legislature of Illinois passed an act already referred to. The sections of our revenue act, relating to an inheritance tax, are almost literal copies of the whole of the Illinois law. The person who framed the Colorado law evidently had before him the Illinois law, which was copied, with here and there a word changed. The only substantial difference is in the rate, and in the verbiage of the proviso relative to exemptions. In 1897 the supreme court of Illinois in *Kochersperger v. Drake, supra,* passed upon the constitutionality of the law of that state. As our law was adopted after that decision was rendered, the utterances of the Illinois court come to us with a force like unto that of a legislative enactment.

On pages 125 and 126, the Illinois court said:

''The laws of descent and devise being the creation of the statute law, the power which creates may regulate and may impose conditions or burdens on a right of succession to the ownership of property to which there has ceased to be an owner because of death, and the ownership of which the state then provides for by the law of descent or devise. The imposition of such a condition or burden is not a tax upon the property itself, but on the right of succession thereto. To deny the right of the state to impose such a burden or condition is to deny the right of the state to regulate the administration of a decedent's estate. When, by the act of June 15, 1895, for the taxation of gifts, legacies and inheritances in certain cases, the legislature prescribed that a certain part of the estate of the deceased person should be

paid to the treasurer of the proper county for the use of the state, it was in effect an assertion of sovereignty in the estate of deceased persons.    Whether to be levied and determined as a tax or penalty, the principle is, that where one owning an estate dies, that estate is to be assessed in accordance with the provisions of the act and the tax to be paid for the right of inheritance.    The amount reserved to the state from the estate of a deceased owner is not a tax on the estate, but on the right of succession.''

Thus the decisions of the courts in other jurisdictions impel the inevitable conclusion that it is sought in this proceeding to tax the right of the regents of the university and the right of the county or city of Boulder to receive the legacies left to them by the will of Andrew J. Macky.

While this result has been reached without special reference to decisions of this court, it is gratifying to note that in former decisions, this court has reached the same conclusion.

In *Brown v. Elder, supra,* wherein the inheritance tax in this state was held constitutional, after adverting to the fact that all the objections which were made to its constitutionality had been met by other courts, and that it was not necessary to make any argument in support of its validity, this court, at page 532, said:

''We shall content ourselves merely with the general statement taken from the opinion of the supreme court of the United States in *Magoun v. Ills. Trust & Sav. Bank,* 170 U. S. 283, in which the decree of the circuit court of the United States for the district of Illinois upholding the validity of the act of which ours is a substantial copy was affirmed, that the constitutionality of such taxes is based upon two principles:    First, an inheritance tax is not one on property, but one on the succession; second, the

right to take property by devise or descent is a crea-
ture of the law, and not a natural right, and therefore
the authority which confers it may impose conditions
upon it.''

And the court summing up its argument, on page
539, said:

''We have already held that our law imposes a
tax upon the privilege of taking, receiving and en-
joying property that passes by will or under our
intestate laws, and that authority for its imposition
is found in the sovereign power of the state to lay
tax upon privileges and successions.''

In *People v. Koenig,* 37 Colo. 283, our court
again refers to this tax as ''A succession or inherit-
ance tax, excise or duty.'' And on pages 285-6, after
summarizing section 21 of the act, this court said:

''From the foregoing summary of the section, it
is apparent that thereby the tax, or duty, imposed is
upon the receipt of some beneficial interest in prop-
erty which passes by will or under the intestate laws
of the state. Each heir, devisee or legatee must pay
in proportion to the amount which he actually re-
ceives. While all heirs, devisees and legatees, etc.,
are liable for such taxes, certainly each beneficiary
can be held only for the tax on what he receives, and
not on the whole estate, unless he receives the same.
* * * As the tax is laid upon the receipt of 'such
property by each person,' naturally the exemption
should, and we hold does, apply to the separate dis-
tributive shares and legacies, and not to the aggre-
gate value of the property of the decedent.''

Other quotations from this case would unneces-
sarily lengthen this opinion. A careful perusal of
that decision shows that its reasoning is based upon
the hypothesis that the tax is on the beneficiary and
leads to the conclusion that if this court were now to
hold that our inheritance tax is a burden upon the

estate of a deceased person, payable out of his estate, and is not a tax upon the right to receive a legacy, or distributive share of the estate to be borne by the beneficiary, such holding would be foreign to the reasoning of our court in *People v. Koenig,* and would be in effect a reversal of that case.

The conclusion having been reached that the right of the regents, and the right of the county or city of Boulder to receive the legacies in the present case, are the subjects sought to be taxed, and that the regents, and the county or city, are the beneficiaries from whom it is sought to collect the tax, it becomes necessary to inquire whether these public corporations are exempt from the tax; or rather are such rights of such public corporations proper subjects of taxation within the contemplation of our inheritance tax law.

Appellants claim an exemption first under section 4 of art. X of our constitution, and section 17 of the revenue act, and second upon the broad principle that a state never taxes its own property, or the property of minor governmental agencies of the state.

The sections of our constitution and revenue act referred to, provide that the property of the state, counties, cities, towns and other municipalities shall be exempt from taxation. As these sections deal with taxation of property, it may be difficult to apply them in this case. It is not necessary, however, to consider whether these sections apply or not.

It is enough to say that a county and a city, though differing somewhat in their corporate nature, are public corporations, carrying out the powers delegated by the laws of the state for the purpose of local government. What are the regents of the university? Section 5 of art. VIII of our constitution declares the university of Boulder to be an institution of the state. Section 12 of art. IX, provides that the regents of

the university shall be elected by the people, and constitutes them a body corporate under the name of "The Regents of the University of Colorado." Section 14 of the same article provides, that this corporation shall have the general supervision of the university and the exclusive control and direction of its funds and appropriations. By constitutional amendment, all these rights and franchises may be changed or taken away.

The regents constitute a body corporate, but this body is a part of the state, a department of the state to which is entrusted the supervision and government of the university of the state. By sec. 5 of art. VIII of the constitution, this body corporate is under the control of the general assembly, except as limited by the other provisions of the constitution. It is fostered by the state. Appropriations are made and confided to it, which are raised by taxation upon the property of the people of the state. It is a public corporation in which the regents have no private interest whatever. It is an agency of the state for the government of the university. Its property and rights are the property and rights of the state.

There is a principle of law by which some things are always, presumptively or impliedly, exempted from the operation of general tax laws, because it is reasonable to suppose that they were not contemplated by the legislature at the adoption of the law. Such is the case with property belonging to the state, and its governmental agencies, which is held for governmental purposes. It is said that the taxation of such property would render necessary new taxes to meet the demand of the tax imposed, and the public would be taxing itself in order to raise money to pay to itself. Though the state has the power to do this, the process would be a useless one, and by it no one would be benefited except the officers employed,

whose compensation would go to increase the tax levy. Such property is therefore regarded as impliedly exempt from the operation of tax laws unless the intention to include it is clearly expressed.—*Trustees, etc., v. Trenton,* 30 N. J. Eq. 667; *Doyle v. Austin,* 47 Cal. 353; *Directors of Poor v. School Directors,* 42 Pa. 21; Cooley on Taxation (3d ed.) 263 *et seq.;* Abbott Mun. Corp. 716.

The authorities last referred to, it is true, speak only of taxes on the property of the state, or its governmental agencies. It is perfectly logical, however, to say that the same thing is true in case of an excise tax, when the subject sought to be taxed is some right of the state or its governmental agencies, the exercise of which will aid them in the performance of their governmental duties. Indeed, if the doctrine of implied exemption is true in case of a property tax, then it follows that it must also be true in case of an excise tax. No matter what the subject of taxation may be, in our revenue law, the object is always the same—the raising of money for the support of government in the state. One of the great objects of county government is the erection and maintenance of homes for the poor. By subdivision 47 of sec. 6525, Rev. Stats. of 1908, cities and towns are empowered to erect and maintain hospitals, orphanages, etc., for the relief of persons in sickness and distress, through poverty. Thus has the state provided for the care and support of the poor and dependent of its people. Hospitals and homes for this class of unfortunates must be built and maintained by taxation, unless some person, as in the present case, donates a fund for that purpose. An auditorium is a convenient and necessary building to be used in connection with the university. Sooner or later it would be built by taxation were it not for this present gift. What substantial difference is

there between taxing the poor-house, hospitals and orphanages of the county and city, and the auditorium of the university, and taxing the right of these public corporations to receive a fund with which to erect these buildings, the erection of which is the exercise of a governmental duty. The application of the doctrine of implied exemption of governmental subdivisions and agencies from excise duties or taxes has already been made in this state. In 1901 the general assembly passed a general revenue law, containing the inheritance tax, and some other forms of excise duties. It contained a section imposing a tax of five dollars upon each party appearing in the supreme court. This was for the purpose of state revenue, and was not recoverable by the successful party. It was in fact a tax upon the right to appear in the supreme court, and was levied in general language, including all litigants. This tax was not contained in the revenue law of 1902 when, for some reason, the law of 1901 was substantially re-enacted. The then county of Arapahoe, in one case, and the city of Denver in another, paid this supreme court tax of 1901 under protest, and then moved to have the same refunded. In the opinion rendered on the determination of the motion in the *City of Denver v. Bonesteel,* 28 Colo. 483, this court said:

"It is by virtue of political subdivisions, such as counties, and municipalities like cities, that the laws are executed and the welfare of the people subserved. Taxes are charges levied by the sovereign state upon the persons of its subjects or citizens, and not charges upon itself. Revenue is the object of taxation, and none would result from levying a tax upon the agencies of the state through which it exercises the functions of government, or by virtue of which it protects and enforces its rights or those of its citizens. Taxation of these functions and agencies

would, in effect, be merely taking money out of one pocket and putting it into another. In the end, no net revenue would be derived. Such a policy would simply require a levy to meet these expenses in the first instance, to be again returned by the imposition of a fee. Hence, however general the statute may be in enumerating the parties liable to a tax of the character under consideration, the rule is that the subdivisions of the state created for governmental purposes are not included, or were intended to be excluded, in the absence of a specific declaration to the contrary; and the general rule of law invoked by the attorney general with respect to exemptions does not apply to public matters.''

It is thus apparent that the doctrine of implied exemption, as applying to this case, is the law of this state, and if it is not now applied, there would be a departure from that law. It follows, therefore, that the judgment of the district court was wrong.

The New York decisions cited by both parties have not been discussed for the reason that these decisions appear to deal with taxes of this nature, generically, or with laws specifically different or turn upon the point that the statutes do not expressly exempt public corporations from taxes of this nature, thus not considering the law of implied exemption in such cases, as applied in this state.

The judgment will, therefore, be reversed and this cause remanded with directions to the district court to vacate its judgment and enter a judgment, that the legacies, when paid to the regents of the university and the city or county of Boulder, shall be so paid free from and without the payment of any inheritance tax..          *Reversed and remanded.*

Decision *en banc,* all the justices concurring.