# SUPREME COURT

OF THE

# STATE OF COLORADO

AT JANUARY TERM, A. D. 1923.

---

## No. 10,212.

IN RE MACKY ESTATE. BOARD OF REGENTS OF THE UNI-
VERSITY OF COLORADO *v.* WILSON.

Decided November 6, 1922. Rehearing denied March 5, 1923.

Proceeding involving the settlement of an estate.
Claim for interest on estate funds, disallowed.

*Reversed.*

1. APPEAL AND ERROR—*Findings.* The residuary legatee charged that
the executor of the will had unnecessarily delayed the settle-
ment of the estate. On review, it is assumed from the record—
there being no special findings—that the trial court decided
there was no unreasonable delay, which finding the appellate
court declined to disturb.

(1)

2. EXECUTORS—*Interest on Estate Funds.* An executor held charge-
able with interest on funds in his hands, distribution of which
was unreasonably delayed.

3. *Taxes—Payment Disallowed Executor.* Claim by executor for
amount paid as taxes on estate property disallowed on the
ground that had the property been distributed as ordered, it
would have been exempt from taxation.

4. *Investment of Estate Funds.* It is an executor's duty with
reference to investments, to treat the funds of the estate as an
ordinarily prudent man would treat his own.

5. *Failure to Invest Estate Funds—Justification.* An executor
who attempts to avoid liability for his failure to invest estate
funds, on the ground that he was ordered by the court not to
invest them, must produce the order; and the advice of his
attorney not to invest them will not excuse him.

   And where the residuary legatee requested the executor not
to invest the funds in his hands, the executor could not there-
after be held for interest thereon, he having complied with the
request.

6. *Interest on Estate Funds.* An executor held liable for interest
on estate funds in his hands, which he negligently failed to
invest.

7. *Bond—Premium.* The allowance for premiums on an execu-
tor's bond should be only a sufficient amount to secure a reason-
able bond.

8. *Bond—Premium.* An executor may not take a commission on
a premium for writing his own bond as such executor.

9. *Liability for Interest.* An executor cannot be held liable by a
legatee for interest on estate funds that are payable to him on
demand, when he fails to ask for an order of distribution.

10. APPEAL AND ERROR—*Unintelligible Decree.* When the decree of the
trial court is unintelligible, the appellate court may remand
the cause with instructions to enter a proper decree.

*Error to the District Court of Boulder County, Hon. Neil
F. Graham, Judge.*

Mr. EDWIN H. PARK, Mr. VICTOR E. KEYES, attorney
general, for plaintiff in error.

Mr. HENRY O. ANDREW, Mr. F. S. LEUTHI, for defendant in error.

*En banc.*

MR. JUSTICE DENISON delivered the opinion of the court.

UPON the final report of the defendant in error as executor of the will of Andrew J. Macky, the plaintiff in error, as residuary legatee, sought to surcharge the executor upon his account with a large amount of interest on funds of the estate held by him. The matter was appealed from the county court to the district court of Boulder county and from a decision of the latter court disallowing nearly all of the surcharge the board of regents brings error.

The facts essential to our consideration are as follows: In June, 1907, Macky died. He left a will by which he made the defendant in error his executor and the plaintiff in error his residuary legatee. He left some $60,000 in specific legacies to relatives and also $50,000 for the erection of a hospital in Boulder, providing that if it was not accepted and so used, the same would go to certain specific legatees, with one exception the same previously named in the will.

July 29, 1907, the executor qualified, having previously collected about $116,000 from the First National Bank of Boulder, which he deposited in his name as executor in that bank. He has kept his account there ever since, retaining all the funds in open account without investment or interest from the bank.

August 1, 1908, the executor paid all the specific legacies except the $50,000 for the hospital. About this time the county court entered an order that the legacy to the university was not subject to an inheritance tax. This matter was taken to the district court which held otherwise. The regents and the executor appealed to the supreme court. September 13, 1908, upon petition of the university, the executor was ordered to retain $97,000 of the money then in his hands which was about $107,000 and to distribute

the balance to the University Board. The $97,000 was to be held to cover the legacy of $50,000 to the hosiptal, the hospital inheritance tax of $20,000 and the estimated expenses of administration, $27,000. From this order the executor appealed to the district court and November 16, 1908, the district court made the same order, but required the university to furnish a bond, and from this the executor appealed to the supreme court.

In June, 1909, this court reversed the judgment of the district court as to the inheritance tax, holding that none was due, and dismissed the appeal of the executor from the order of distribution. 46 Colo. 79 and 100, 102 Pac. 1075, 23 L. R. A. (N. S.) 1207. July 6, 1909, motion for rehearing in the distribution case was denied. About this time the attorney for the executor, it is claimed, notified the attorney for one Mrs. Oles to "get busy if he was going to do anything." July 22, 1909, Mrs. Oles brought suit claiming one-third of the estate by virtue of an alleged contract. On July 30, 1909, the regents made a new demand in the county court upon the executor to compel distribution, which the executor claimed was made at his request, in order to protect him. About this time the attorney for the executor, in some conversation with the president and other officials of the university so far forgot himself as to use vile and insulting language to them and threatened, "I'll get you yet." A new order of distribution was entered August 3rd, through which this partial distribution was made, leaving $97,000 to await the determination of the suit in the matter of the legacy to the county. A demurrer to Mrs. Oles' complaint was sustained and the case was brought to this court. April term, 1911, the legacy to the county was held invalid by this court (50 Colo. 610, 115 Pac. 526) ; thereupon the county court held that this legacy went to the conditional legatees therein named. In the January term, 1913, the supreme court affirmed the county court, the case having been brought here by the regents upon the claim that under the circumstances the legacy had lapsed and gone

to the residuary legatee.   In the April term, 1914, the Oles case was reversed in this court and sent back to the district court for trial; and June 26, 1915, it was tried in the district court and judgment entered dismissing the bill.   In June, 1916, the $50,000 willed to the hospital was distributed to the conditional legatees.   In 1917 the executor's fees and the attorney's fees were determined in the county court.   These matters were appealed to the district court where they were decided in 1918, the matter of the attorney's fees was brought to this court and was determined here in April, 1920, 68 Colo. 556, 191 Pac. 106.   October 19, 1920, the executor filed his final report. The board of regents filed their objections thereto, claiming the surcharge, and the executor answered.   June 18, 1921, this matter was determined in the district court and was brought here in December of that year.

First.   It is claimed that the delay in the settlement of this estate has been unnecessary and unreasonable. There were no special findings in the district court; we must assume, therefore, that that court has found that there was not unreasonable delay.   We will not disturb that decision.   Indeed we cannot say, as matter of law, that there was any unreasonable delay except in the appeal to this court of the order of distribution and that did not delay the settlement of the estate because there was other litigation that would have prevented it.

It is claimed that the conduct of the attorney for the executor shows an antagonistic animus which justifies this court in saying that the settlement of the estate has been purposely delayed.   Perhaps a sufficient answer to this is to say that the court below, we must suppose, has found otherwise and we cannot say that the finding was wrong because it is not uncommon, we regret to say, for men to become angry and say things that they afterwards regret, as doubtless is the case with the attorney in this case.

With reference, however, to the delay in the distribution, upon the order of 1908, inasmuch as we have held in 46 Colo. 79, 102 Pac. 1075, 23 L. R. A. (N. S.) 1207, dis-

missing the executor's appeal, that that appeal was trivial, this delay would seem to be unreasonable; we think, therefore, that the executor should be charged with interest on the sum of $10,171.43, the payment of which was delayed, at 8% per annum during the time that intervened between the order of the county court September 18, 1908, until August 3, 1909, the date the distribution was made. He is charged this interest not because he ought to have invested but because he delayed unreasonably in paying it over.

It follows that the taxes, $2,514.72, paid by the executor on real estate the distribution of which was also thus delayed, should be disallowed, because, if the distribution had been made when ordered, this property would have been exempt from this taxation. The executor should not, however, be charged with interest on this sum because bad faith is not shown and for the reasons set forth in subdivision 5 below. Except that, since the sum ought to be in the residuum four per cent from 1915 should be charged on it, as provided below with respect to the rest of the residuum.

Second. The regents claim that the executor ought to have obtained interest upon the funds in his hands whether the delay was unreasonable or not. The rule is that it is the executor's duty, with reference to investments, to treat the funds in his hands as an ordinarily prudent man would treat his own, otherwise he is guilty of negligence; he has wrapped his talent in a napkin and hidden it in the earth and will be surcharged with what he ought to have gained. 3 Alex. Wills, § 1510, *De Peyster v. Clarkson,* 2 Wend. (N. Y.) 78, 88; *Riley v. McInlear's Estate,* 61 Vt. 254, 263, 17 Atl. 729, 19 Atl. 996.

On the face of the regents' showing this case presents a remarkable instance of neglect. Year after year, year after year, for fourteen years large sums running from $10,000 to over $130,000 have lain idle on open account in the bank, with not one cent of increase for the estate. No ordinarily prudent man would so treat his own. Vari-

ous matters are set up in the answer to excuse this, some wholly immaterial, for example, that the executor had exercised great skill and industry with reference to certain pieces of property of the estate, whereby he had saved the estate much money. He is to be commended for this, but it was a part of his duty and does not excuse his neglect of other duties. He also says that some of the money which he was holding was not the property of the regents and therefore the interest on it would not be theirs. The board is the residuary legatee, interest on the funds is assets and belongs to the residuary legatee. He also alleges that he was ordered by the court not to invest this money but to keep it on open account in the bank without interest, but no order is produced. Orders of court must appear by the record. *In Re Thomas' Estate*, 26 Colo. 110, 56 Pac. 907. Neither is advice of his attorney an excuse.

The executor, however, testified that the president of the board of regents and its attorney, Mr. Giffen, requested and insisted that none of this money should be invested but should be kept in open account, without interest, and that that was the reason why he did not invest it. This was not directly denied, we must assume that the court believed it, and it furnishes a very strong equity in the executor's favor. How can the board of regents claim that the executor is negligent in doing what they requested? How can they claim that he ought to have done what they insisted that he should not do? The situation is a most peculiar one; we have here men insisting upon conduct by their trustee which obviously must lose them considerable sums and actually does lose them thirty or forty thousand dollars, and making no objection to that conduct for many years, a remarkable and unaccountable situation, but we must let it stand. The evidence is too specific to admit counsel's theory that the request referred only to term investments.

At least as early as 1915, however, the regents were objecting that Mr. Wilson did not collect any interest. From that time, therefore, he is chargeable with interest

on the sums then in his hands which were as follows: from July 9, 1915, to February 7, 1918, $23,887.15; from February 7, 1918, to February 18, 1920, $12,729; from February 11, 1920, to the present time $10,313.80; upon which he should be surcharged interest.

Since we have seen that he cannot be charged for unreasonable delay we do not think he should be charged the legal rate of 8% on these sums, and since during all that time he has been obliged to hold himself in readiness to settle the estate, we do not think he can be charged with any rate of interest which would have resulted from investments more or less permanent; but during all that time the banks in Boulder have been paying four per cent on one year deposit certificates and have been redeeming those certificates on demand if interest was waived. There is no reason then why the executor should not be charged four per cent on these sums, with yearly rests, from the date that he or his attorney knew the regents were claiming that he should get interest which seems to have been on or about July 9, 1915, and this should be done.

Third. The bonds of the executor during his long incumbency have cost the estate in premiums something over $3,000. Since the executor cannot be charged for delay the claim that a part of this should be charged against him cannot be sustained on that ground. It appears, however, that since about 1915 he has been carrying a bond many times greater than the total estate remaining unadministered. His allowance for these premiums should be reduced to the price of a reasonable bond for the sums held by him.

Fourth. The firm of Wilson & Webber, to which the executor belongs received as commission on these premiums the sum of $650. This of course was unlawful. So much of those commissions as the record shows went to the executor himself should be charged against him with interest at 8% per annum from the time he received them. It is no defense to this charge to say that the estate paid no more for the bonds in this way than it

would have had to pay elsewhere. The reason for charging the executor or trustee in such a case as this, is not that he has depleted the estate, but that he is forbidden to make profit out of dealings on its behalf, whether such profit depletes the estate or not. He is in the same position as an attorney would be who should charge the full amount of a bill paid by him on his client's behalf upon which he had received a discount.

Fifth. The executor collected during the time of delay in distribution, from income of property which should have been distributed, the sum of $19,719.12. If the property had been distributed this sum would have been received by the university instead of the executor. We do not think he should be charged interest on these sums: they were payable on the demand of the board. The board should have asked for an order from the county court for their payment. He has fully accounted for them as assets of the estate, and such part as has not been used is contained in the balance now in his hands.

Sixth. The decree. as it appears in connection with the record before us is unintelligible. It reads "Interest on the 8% of the amounts received by the executor subsequent to Sept. 18th, 1908, which amount aggregates $10,171, interest on such amount aggregating $598.76.

The court further allows docket fees of $40.80. The court disallows all remaining claims."

The docket fees were properly allowed.

The amounts received by the executor subsequent to September, 1908, aggregate many thousands of dollars more than the above amount. The sums received by the executor subsequent to September 18, 1909, the date of the order of distribution, and before the distribution was made, amount to over $55,000; the amounts received by the executor after the order and before the distribution was made upon which the regents claim interest aggregate $19,305.37 and the interest on these sums computed from the date of their receipt at 8% up to the date of the distribution would be much more than $598.76; $10,171.73

is the exact sum which was paid upon distribution in cash to the regents, but 8% on this from the date of the order of distribution to the date of distribution August 3, 1909, would be considerably more than $598.76. We have indicated herein that we think that this should have been allowed. Just what the court by its decree meant to allow we cannot tell, but we have made known in the foregoing opinion all the matters with which we think the executor should be surcharged.

We do not consider it necessary to comment upon the other points suggested in the briefs.

The judgment is reversed with directions to the district court to enter a decree in accordance with the foregoing opinion.

MR. JUSTICE CAMPBELL and MR. JUSTICE TELLER not participating.