Estate of FERDINAND W. ROEBLING, deceased.

[Submitted June 4th, 1918.   Decided June 21st, 1918.]

The death duty imposed by the War Revenue act of 1916 is a tax upon decedent's estates, and in assessing the state transfer inheritance tax is to be deducted from the value of the estate, in ascertaining the clear market value of the property transferred.

---

On appeal from an assessment of the comptroller of the treasury.

*Mr. Scott Scammell,* for the appellants.

*Mr. Herbert W. Boggs,* assistant attorney-general, for the state.

BACKES, VICE-ORDINARY.

The problem presented on this appeal is whether the death duty imposed by the War Revenue act of congress, approved September 8th, 1916, chapter 463, volume 39, public laws, pages

*756, 777,* is to be deducted from the value of the estates of decedents, in assessing the transfer inheritance tax of 1909 (*P. L. 1909 p. 325*), as amended in 1914. *P. L. 1914 p. 267.*

Ferdinand W. Roebling, a resident of Trenton, died March 16th, 1917, testate, leaving an estate appraised, for taxing purposes, at $10,000,000 plus. The federal tax amounts to over $1,000,000, and the question is whether this sum should have been deducted from the appraisement and the state tax levied on the transfer of the remaining $9,000,000. The comptroller of the treasury refused to grant the allowance and this appeal is from his ruling.

The point does not involve the power of congress to levy the tax, nor is the question one of precedence as between the two governments, nor yet whether a double tax is lawful, but the decision turns upon the nature of the tax levied by the national government, and the construction to be given to the state statute in respect of it.

The power of congress to levy death duties, and the constitutionality of such legislation, was settled by the United States supreme court in the cases of *Scholey* v. *Rew, 90 U. S. 331,* and *Knowlton* v. *Moore, 178 U. S. 41.* In the elaborate opinion of Mr. Justice White, in the last-named case, the history of death duties and their fundamental basis are interestingly and instructively discussed. There the learned, present, chief-justice declared that, although different modes of assessing such duties prevail, nevertheless, tax laws of this nature in all countries rest in their essence upon the principle that death is the generating source from which the particular taxing power takes its being and that it is the power to transmit or the transmission from the dead to the living, on which such taxes are more immediately rested; that all courts and all governments concede that the transmission of property, occasioned by death, is a usual subject of taxation; and that while the transmission of property by death is exclusively subject to the regulating authority of the several states, the thing forming the universal subject of taxation, upon which inheritance and legacy taxes rest, is the transmission or receipt of property, occasioned by death, and not the right to regulate its devolution. In adverting to the view, com-

monly accepted, that the tax rests on the privilege enjoyed by
states to regulate succession, he indicated that the doctrine of
taxation upon the privileges, as adopted by the courts, is merely
a qualification of the fundamental right to levy duties upon the
power to transmit or the transmission or the receipt of property
by death, and is in harmony with the principle he laid down, and
subordinately affords a legitimate and defensible basis of
taxation.

That both state and nation have the right to levy, at the same
time, the same class of death duties—double taxation—is also
settled by *Knowlton* v. *Moore, supra; Blackstone* v. *Miller, 188
U. S. 189; Hopper* v. *Edwards, 88 N. J. Law 471.*

This brings us, then, to inquire into the character of the tax
levied under the federal statute. Section 201 of the act of con-
gress provides:

*"That a tax (hereinafter in this title referred to as the tax), equal to
the following percentages of the value of the net estate, to be determined
as provided in section two hundred and three, is hereby imposed upon the
transfer of the net estate of every decedent dying after the passage of this
act, whether a resident or non-resident of the United States."*

Then follows a graduated increase of percentage upon in-
creased amounts of the net estate up to *"ten per centum of the
amount by which such net estate exceeds $5,000,000."* The net
estate is to be determined by deducting from the gross estate
funeral and administration expenses, debts, certain losses in-
curred during the settlement of the estate, and such other charges
against the estate as are allowed by the laws of the jurisdiction
under which the estate is being administered, and a flat exemp-
tion of $50,000.

The subtitle of the act "Estate Tax" is significantly descrip-
tive, and a persuasive indication, of the class of death duties
congress was dealing with; and upon looking into the twelve
sections comprising the legislation, all doubt vanishes regarding
the particular transfer upon which the tax is imposed.

The value of the net estate is the unit of taxation. This in-
cludes the real estate devised or descending, as well as the per-
sonal property passing to the executor. A return, in duplicate,

under oath, is to be made by the executor of the value of the gross estate, of the deductions, of the value of the net estate, and of the tax payable thereon. The tax is to be paid by him out of the personal estate before distribution, and a receipt for it entitled him to credit and allowance therefor upon the settlement of his account. There is no apportionment of it among the various transferees, nor is the real estate, devised or descending, liable to contribution. On the contrary, 'the collector may recover the tax by a sale of the land, and in that event the devisee or heir-at-law shall be reimbursed out of any part of the personal estate unadministered, or by an equitable contribution by those whose interest is subject to equal or prior liability for the payment of taxes, debts or other charges against the estate. The concluding words of section 208: "It being the purpose and intent of this title that so far as is practicable, and unless otherwise directed by the will of the decedent, the tax shall be paid out of the estate before its distribution," are unmistakable in their purport that the death duty is imposed upon the estate and payable out of the residue. To be more precise, it is imposed upon the *estate,* transferred by death, and not upon the *succession* resulting from death. The distinction is well defined and recognized in countries where both kinds of tax exist. The federal tax resembles the probate duty of the act of 1862, chapter 119 (*12 U. S. Stat. p. 483*), which was payable by the executor out of the estate, while the legacy duty therein provided for (at *p. 485*) was payable by the beneficiaries. The tax occupies the same field of death duty as does the "Estate Tax" in England. By the Finance act of 1894 an estate duty is levied upon the principal value of all property, real or personal, which passes on the death of a person and is imposed upon the estate and is payable by the executor as an administration expense. In addition to this tax, there is also a legacy tax, and a succession duty upon the realty, payable by the recipients. Speaking of the death duty, Mr. Hanson in his opening chapter—*Hans. D. D. (6th ed.)*—says:

"The new duty imposed by the Finance act, 1894, and called estate duty, supersedes probate duty; but the key to the construction of the Finance act, 1894, and the amending acts lies in remembering that the new estate duty, although it is leviable on property which was left

untouched by probate duty, such as real estate, yet is in substance of the same nature as the old probate duty.    What it taxes is not the interest to which some person succeeds on a death, but the property in respect of which an interest ceased by reason of the death.    Unless this principle is clearly kept in view, the mind is constantly tempted by the wording of the act to revert to principles of succession duty, which have no real connection with the subject."

The specie of death duty of the federal tax determined, we come next to consider the character and scope of the Transfer Inheritance Tax act and its application to situations like the present one.    The part with which we are concerned reads:

*"1. A tax shall be and is hereby imposed upon the transfer of any property, real or personal, of the value of five hundred dollars or over, or of any interest therein or income therefrom, in trust or otherwise, to persons or corporations, except as hereinafter provided, in the following cases:*

*"When the transfer is by will or by the intestate laws of this state from any person dying, seized or possessed of the property while a resident of the state.*

*"All taxes imposed by this act shall be at the rate of five per centum upon the clear market value of such property, except as hereinafter provided."*

The tax, it will be observed, is not imposed upon the immediate transfer of property occasioned by death, but upon the transfer *to any person or corporation,* when the transfer is the subject of a legacy or devise, of distribution or descent.    In other words, it is not on the transitory succession of the executor or administrator, but upon the separate successions of the transferees, whether the succession be of the whole of the estate—a universal succession—or of the singular succession of a legatee or devisee.    It is not on the amount that goes into their pockets, but upon the clear market value of the estate transferred to them at the decedent's death by the instrumentalities enumerated in the act.    The tax is not upon the aggregate value of the estate transferred, apportioned among the transferees, but is assessed upon the value of the several interests and is levied upon kindred at varying rates, depending upon the relationship of the transferees to the decedent.    Each transferee is liable for the tax

upon his share of the estate which is to be deducted from the legacies or distributive shares by the executor and for the payment of which he is personally liable.

The settled construction of the act is that it imposes a tax upon the right of succession to the property of the testator or intestate which vested in the successors severally and in their respective shares or proportions, and not upon the property or estate of the decedent. *Matter of Hoffman, 143 N. Y. 327; Matter of Westurn, 152 N. Y. 93; Malter of Gihon, 169 N. Y. 443; In re Sherman Estate, 166 N. Y. Supp. 19; affirmed, 222 N. Y. 540; Dixon v. Russell, 79 N. J. Law 490; Carr v. Edwards, 84 N. J. Law 667; Christie's Estate, 87 N. J. Eq. 303.*

Conceiving, then, the state of the law to be that the federal tax is imposed upon the estate and that the transfer inheritance tax is levied upon the succession, it becomes at once apparent that the clear market value of the property transferred from the dead to the living is the value of the estate after all lawful charges against it, including taxes, are satisfied. In the case in hand, the beneficiaries succeeded to $9,000,000, and upon this sum, as apportioned by the testator, the state tax should have been assessed. While the practical result is a financial loss to the state, it is not brought about by an assumed supremacy in the United States; nor is the exercise of the taxing power by the national government an interference with state rights, as some judges have intimated. The statutes do not clash, albeit the operation of the federal act effects a reduction of the state ratable. They function in entirely different taxing zones. Relief lies in appropriate legislation. It is, undoubtedly, within the power of the legislature to impose an estate death duty, co-extensive with the federal act, a tax on the power to transfer at death, for instance—and which may co-exist with the Transfer Inheritance Tax act which, as we have seen, levies on the power to receive at death.

The highest courts in two of the states have recently decided the question, reaching opposite conclusions. The Minnesota supreme court held that the federal tax should be deducted. *Smith v. Probate Court of Hennepin County, 166 N. W. Rep.*

*89 N. J. Eq.*                In re Roebling's Estate.

*125.* The court of appeals of New York held to the contrary view. *In re Sherman Estate, supra.* The New York supreme court allows that its transfer tax is based upon the amounts passing to the respective transferees, but holds to the view that the conditions of transfer, as embodied in its Transfer Tax act, comprehend the clear market value of the property at the time of the transfer, exclusive of federal tax, and expressed the opinion that if the federal government may impose an inheritance tax, which is entitled to be deducted from the estate prior to the assessment of the estate transfer tax, it has interfered with such conditions, and that the constitutionality of a federal act entitled to such a construction and effect might well be doubted. If the court had acknowledged the federal tax as levied upon the estate transferred, doubtless a different result would have been reached.

In the earlier case (*Matter of Gihon, supra*), the court of appeals had before it the question whether the federal legacy tax of 1898 should be allowed as a deduction, and it held, and I quote from the *Sherman Case:* "Neither the amount of the state tax, nor the amount of the federal inheritance tax imposed under the War Revenue act of 1898, was deductible, because each was a tax, not upon property, but upon succession—that is, a tax on a legatee for the privilege of succeeding to the property—and was payable out of his legacy, *not out of the estate;*" a tacit evincement that if the federal tax had been upon the estate and not upon the legacies, it would have been deductible from the assets of the estate before computing the state transfer tax. Previous to the decision in the *Gihon Case,* the supreme court of Massachusetts, in *Hooper* v. *Shaw, 176 Mass. 190,* decided that the legacy tax of the War Revenue act of 1898 should be deducted in ascertaining the state's succession tax. In view of the fact that both federal and state taxes were imposed upon the same successions, and were payable by the beneficiaries, it is difficult to reconcile the deliverance in that case to the principles of the *Gihon Case.*

The appraisement upon which the tax was assessed will be reduced by the sum of the federal tax.

P. S.    Since writing the above, my attention has been called to the case of *Corbin* v. *Townshend, 103 Atl. Rep. 647,* in which the supreme court of Connecticut decided that the federal tax is to be deducted from the appraisement in computing the state's succession tax.