Argued May 31, modified July 19, 1921.

# IN RE INMAN'S ESTATE.

## POULSEN ET AL. *v.* HOFF, STATE TREASURER.

(199 Pac. 615; 16 A. L. R. 675.)

**Wills—Right to Dispose of Property by Will is not a Natural Right.**

1. The right to dispose of property by will and the right to receive property by will or inheritance are not natural rights, but creatures of the law.

**Taxation—Right to Inheritance may be Taxed.**

2. As the right to transmit property at death, and the right of the living to receive property, are creatures of the law, the state which creates the right to transmit and the right to receive property can tax such created rights, and in fixing the amount of such tax discriminate between relatives, and distinguish between strangers and relatives, and grant exemptions.

**Taxation—Death Duty is not a Direct or Capitation Tax.**

3. A death duty, whether it be an estate duty or an inheritance tax, is neither a direct tax upon property nor a capitation tax.

**Taxation—Provision for Lien for Death Duty Does not Make Such Tax a Direct Tax.**

4. A death duty does not become a direct tax merely because there is a statutory provision for lien upon the property and a requirement of payment by executor or administrator, such provisions being merely appropriate legislation to enforce collection of the tax.

**Taxation—Death Duties are Exercises or Imposts upon the Right to Transmit Property or to Succeed Thereto.**

5. Death duties are, in reality, excises or imposts upon the right to transmit property at death, or upon the right to succeed thereto from the dead.

**Taxation—In Absence of Constitutional Inhibition, State may Levy Inheritance Taxes.**

6. In the absence of some constitutional inhibition, the state legislature may levy an inheritance tax.

---

1. Right to take property by will as a natural right protected by the Constitution, see note in Ann. Cas. 1918A, 939.

2. Leading features of inheritance tax laws, see notes in 127 Am. St. Rep. 1036; 33 L. R. A. (N. S.) 606.

On applicability of general tax exemptions to inheritance or succession tax exemptions, see note in 23 L. R. A. (N. S.) 1208.

On liability as between residuary estate and legacies or devises for federal estate tax, see note in 7 A. L. R. 708.

Taxation—Federal Estate Tax may be Deducted Before Computing State Inheritance Tax.

7. As the federal estate tax imposed by act of September 8, 1916, Title II, Section 201 (Comp. Stats., § 6336½b), as amended by act of March 3, 1917, and act of February 24, 1919, Section 401 (U. S. Comp. Stats. Ann. Supp. 1919, § 6336¾b), is an estate tax, being an excise upon the transmission at its very beginning before the estate is broken up, and not on the right to receive, the amount of such federal inheritance tax may be deducted in computing the amount due under Oregon Inheritance Tax Law (§ 1191, Or. L.), for that act imposes an inheritance tax on the right to receive, and beneficiaries can in no way receive the amounts deducted by the federal government.

From Multnomah: GEORGE TAZWELL, Judge.

In Banc.

Robert D. Inman died testate on April 27, 1920. The will was admitted to probate and Johan Poulsen, George W. Thatcher and H. B. Van Duzer were appointed executors.

Under date of December 16, 1920, the executors filed a petition asking the court to determine the amount of the inheritance tax to be paid to the State of Oregon. The petition showed that the estate was valued at $744,204.16; and that the indebtedness of the estate, including an allowance made to the widow, sickness and funeral charges and other claims filed against the estate, court costs, fees of attorneys and fees of executors, aggregated $82,324.05. The petition also showed that the federal estate tax amounted to $25,067.36.

Among the devisees and legatees named in the will were Clara A. Inman, the widow; Minnie Myrtle Inman, a daughter; Ivy Frances Inman, a daughter; and George W. Thatcher. The court fixed "the value of the inheritance" of the widow at $345,890.55; of each daughter at $157,945.27; and of

7. Deduction of federal estate tax before computing state tax, see note in 7 A. L. R. 714.

George W. Thatcher at $4,000. The court "ordered that the inheritance tax of Clara A. Inman, widow, is hereby fixed at the sum of $9,819.53"; of each daughter at $3,263.36; and of George W. Thatcher at $250.

In their petition the executors asked that the federal estate tax amounting to $25,067.36 be deducted, together with debts of the decedent, funeral charges and the like, from the gross value of the estate, before calculating the amount of the state inheritance tax. The court refused to deduct the federal estate tax before computing the state inheritance tax; and the executors appealed.                    MODIFIED.

For appellants there was a brief over the names of *Messrs. Cake & Cake,* with an oral argument by *Mr. W. M. Cake.*

For appellants there was a brief over the name of *Mr. I. H. Van Winkle,* Attorney General, *Mr. Walter H. Evans,* District Attorney, and *Mr. James W. Crawford,* with an oral argument by *Mr. Crawford.*

HARRIS, J.—The executors are contending that the federal estate tax exacted under the act of Congress of September 8, 1916, Chapter 463, Title II, Section 201, 39 Stats. at L. 736, 777, and amendatory acts, must be deducted from the gross value of the estate before the state inheritance tax can be calculated. The state treasurer is contending that the federal estate tax should not be deducted. If the position taken by the state treasurer is to be approved, then the order of the court fixing the state inheritance tax is correct and should be af-

firmed; but if the view of the executors is the correct one, then the order of the court should be modified. If the federal estate tax should have been deducted before calculating the state inheritance tax, then there was an overcharge of $626.31 against the widow's share and an overcharge of $187.89 against each of the shares of the two daughters.

A correct solution of the problem presented requires an examination of the act of Congress providing for what is commonly known as the federal estate tax and also an analysis of the act of our state legislature providing for inheritance taxes. At the very outset we may premise that the nature and incidence of the respective taxes are the factors which will control the final decision. We must then ascertain the nature of these taxes and discover the incidence of each tax before we can determine whether the state tax should be calculated after first deducting the federal tax. Since sometimes, as said by Mr. Justice HOLMES in *New York Trust Co. v. Eisner* (U. S.) (65 L. Ed. ——, 41 Sup. Ct. Rep. 506), "a page of history is worth a volume of logic," it will be of material aid in arriving at a correct understanding of the act of Congress and of our state statute if, instead of at once entering into an inquiry concerning the nature and incidence of the two taxes claiming our special attention, we first make a brief statement of the history of legislation providing for different forms of death duties.

Inheritance taxes are of ancient origin. It is said that this form of imposts was adopted in Egypt in the seventh century before Christ, and that in the year 6 A. D. the Romans copied the idea from the Egyptians. Traces of this method of

taxation may be found in the history of the Middle Ages; and practically all the nations of Europe have adopted some system of inheritance taxation. Since 1797 the federal government of the United States has at different periods enforced legislation providing for some form of inheritance taxation. In most of the states of the American Union inheritance taxes are now collected: Blakemore and Bancroft on Inheritance Taxes, §§ 15 and 18;. Ross on Inheritance Taxation, § 9; Gleason & Otis on Inheritance Taxation (2 ed.), 3; *Re McKennan,* 25 S. D. 369 (126 N. W. 611, 33 L. R. A. (N. S.) 606, 612); 27 S. D. 136, (Ann. Cas. 1913D, 745, 33 L. R. A. (N. S.) 620, 130 N. W. 33); *State ex rel.* v. *Cline,* 91 Kan. 416 (137 Pac. 932, 50 L. R. A. (N. S.) 991, 994).

One form of death duties was introduced into Great Britain in 1694; and subsequently from time to time additional acts were adopted enlarging not only the species of death duties imposed but also the area of their operation; and since the distinctions between these acts were well known and invariably observed in Great Britain, a brief history of the different acts adopted in that country beginning with 1694 and ending with 1894, and also a brief history of legislation enacted in this country by the Congress of the United States, will be pertinent, for it may be that a page of this history will be "worth a volume of logic." A complete account of the acts adopted in Great Britain appears in Hanson's Death Duties (6 ed.); and a concise analysis of the death duties imposed in Great Britain as well as a thorough exposition of the statutes adopted by our national government may be found in *Knowlton* v. *Moore,* 178 U. S. 41 (44

L. Ed. 969, 20 Sup. Ct. Rep. 747, see, also, Rose's
U. S. Notes). See, also, *State* v. *Alston,* 94 Tenn.
674 (30 S. W. 750, 28 L. R. A. 178); 26 R. C. L. 195.

A probate duty was established in England in
1694. This probate duty was a fixed tax which was
dependent on the amount of the personal estate
within the jurisdiction of the probate court and was
payable on the grant of letters of probate by means
of stamp duties; and this duty was treated as an
expense of administration. In 1780 a duty known
as a legacy tax was imposed; and this duty was col-
lected by affixing a stamp to the receipt given as
evidence of the payment of a legacy or share in the
personal property of the deceased person. The
legacy tax was not deducted as an expense of ad-
ministration, but it was charged and collected upon
the passing of the individual legacies and interests
upon which it was imposed. In 1853 an act was
passed providing for what is known as the succession
duty. This law was a supplement to the legacy tax,
for the reason that the succession duty was imposed
upon land passing by reason of death and also upon
interests in personal property not touched by the
legacy tax. This tax known as the succession duty
was on the one hand unlike the probate duty in that
the latter was and the former was not treated as an
expense of administration; but the succession duty
was like the legacy tax in that both were charged
upon and collected out of the particular interests
subjected to the tax. In 1894 an act known as the
Finance Act was adopted. Section 1 of the Finance
Act provides that:

"In the case of every person dying * * there
shall * * be levied and paid, upon the principal
value * * of all property * * which passes on the
death of such person a duty, called 'Estate Duty,'

at the graduated rates hereinafter mentioned": Hanson's Death Duties (6 ed.), 75.

The estate duty provided for by the Finance Act superseded the probate duty. The estate duty is imposed upon the estate and is payable by the executor as an administration expense: *In re Roebling's Estate,* 89 N. J. Eq. 163, 166 (104 Atl. 295); *Knowlton* v. *Moore,* 178 U. S. 41, 49 (44 L. Ed. 969, 20 Sup. Ct. Rep. 747, see also, Rose's U. S. Notes); Hanson's Death Duties (6 ed.), p. 138. Although the estate duty covers real and personal property and therefore the area of its operation is broader than that of the old probate duty, the two duties are alike in nature and essential characteristics. And although the succession duty covers real and personal property and therefore the field of its operation is broader than that of the legacy duty, these two duties are alike in their nature and essential characteristics: Hanson's Death Duties (6 ed.), 2. Referring to the difference between estate and succession duties, it is said in Hanson's Death Duties (6 ed.), page 76:

"Succession duty looks forward to the interest to which the successor succeeds; estate duty looks back to the property enjoyed immediately prior to the death. In the one case the 'succession' which accrues on a death is taxed; in the other, the interest which the death determines or disturbs."

The probate duty was and the estate duty is the price exacted for obtaining probate. Probate duty was and estate duty is the toll which the state exacts where property left by the decedent, considered as a unit, departs from the dead on its way to the living; and this toll is collected without regard to the destination towards which the property is to be

moved: Hanson's Death Duties (6 ed.), 2; Dobson on Death Duties, 57.

It will be found that beginning with the act of 1797 and ending with the act of 1916, and amendatory statutes, the legislation enacted by the Congress of the United States recognized and preserved the distinctions found in the English acts. In 1797 Congress imposed a legacy tax which, like the English legacy act of 1780, was collected by stamp duties laid on receipts given as evidence of the payment of legacies and distributive shares of personal property; and this tax, like the English legacy duty, was charged upon the legacies and not upon the residue of the personalty. In 1862 an act was passed which, when considered in connection with an act adopted in 1864, had the effect of putting in force in this country the system of death duties prevailing in England, with the result that in the United States there were in 1864—

"A probate duty charged upon the whole estate, a legacy duty charged upon each legacy or distributive share of personalty, and a succession duty charged against each interest in real property": *Knowlton* v. *Moore,* 178 U. S. 41, 51 (44 L. Ed. 969, 20 Sup. Ct. Rep. 747).

In 1898 Congress enacted a statute commonly known as the War Revenue Act. This act was the subject matter of the opinion rendered in *Knowlton* v. *Moore,* 178 U. S. 41 (44 L. Ed. 969, 20 Sup. Ct. Rep. 747). The tax imposed by this statute was in its nature like the English legacy tax, and the incidence of one was the same as the other.

Confusion of ideas may be avoided if some of the nomenclature to be employed here is limited and defined. The generic term "death" most aptly describes all duties occasioned by death; and, hence,

the words "death duties" embrace not only probate and estate duties but also legacy and succession duties. Although the word "inheritance" has been sometimes so employed as to include taxes of the nature of estate duties as well as those of the nature of legacy and succession duties, it seems to the writer that a proper regard for the etymology of the term is sufficient to restrain us from extending its meaning beyond the legacy and succession duties; and, moreover, it will tend to avoid confusion of thought if we do not extend the meaning of the words "inheritance taxes" beyond legacy and succession duties, for even then the term "inheritance" is enlarged beyond its etymological meaning. It is particularly appropriate, however, that the words "inheritance taxes" shall be used to include legacy and succession duties, for by so doing we employ the words in the sense in which they are used in our state statute. Death duties may for the purposes of this discussion be divided into two principal classes. The first principal class includes (a) probate, and (b) estate duties; for these two duties are treated as expenses of administration, and they are alike as to nature and incidence, although the range of one is broader than that of the other. The second principal class embraces inheritance taxes; and this class is in turn divided into (a) legacy, and (b) succession duties; but it must be remembered that these two species of inheritance taxes are alike as to their nature and incidence, although one covers a broader range than does the other; and it must also be remembered that neither one of these two species of inheritance taxes has ever been treated as an expense of administration.

Most of the death duty statutes enacted by the states of the Union have been confined to those species of death duties which we have termed inheritance taxes; but as previously explained our national legislation enacted during the period beginning with 1797 and ending with 1864 covered practically the whole field of death duties; because during that period the Congress provided for: (1) an estate duty; and (2) inheritance taxes, including (a) a legacy duty and (b) a succession duty.

The federal statute of 1916 provided for an estate duty as distinguished from an inheritance tax. The record made of the proceedings in the national House of Representatives and in the Senate demonstrates with mathematical certainty that the framers of the statute intended to enact a law imposing a pure estate duty: *In re Hamlin,* 226 N. Y. 407 (124 N. E. 4, 7 A. L. R. 701); *Plunkett* v. *Old Colony Trust Co.,* 233 Mass. 471 (124 N. E. 265, 7 A. L. R. 696). Title II of the Federal Act of 1916 is headed: "Estate Tax"; and in the second section under Title II, being Section 201 of the act, it is provided:

"That a tax * * equal to the following percentages of the value of the net estate, to be determined as provided in section two hundred and three, is hereby imposed upon the transfer of the net estate of every decedent dying after the passage of this act * * ."

39 Stats. at L. 756, Chapter 463, Comp. Stats., Section 6336a, Fed. Stats. Ann. Supp. 1918, page 312, entitled "An Act to Increase the Revenue and for Other Purposes," as amended by acts of March 3, 1917, Chapter 159, 39 Stats. at L. 1000, and October 3, 1917, Chapter 63, 40 Stats. at L. 300, Comp. Stats., Section 6336aa, Fed. Stats. Ann. Supp. 1918, page

336. The federal act of 1919 in nowise changes the nature or incidence of the tax; for this act, like the act of 1916, calls the tax an "Estate Tax" (see Title IV), and imposes "upon the transfer of the net estate of every decedent" a tax "equal to the sum of the following percentages of the value of the net estate": Section 401, Chapter 18, 40 Stats. at L. 1057, 1095. It will be observed that the federal statutes, including the original act of 1916 and the latest act adopted in 1919, in express terms declare that the tax is imposed "upon the transfer of the net estate of every decedent." The only question to be asked and answered for the determination of the amount of the federal tax is: How much is the net estate of the decedent? The question to be answered is not: How much is the value of the beneficial interest which is to go to a given heir, distributee, devisee or legatee? No inquiry need be made as to how much of the estate is to be received by a given successor.

Every estate within the embrace of the federal statute must pass through the federal government's toll-gate before it can be divided and the several portions into which it is divided sent onward to their respective destinations. Figuratively speaking, this toll-gate is erected and maintained at the place where the net estate of the decedent is assembled preparatory to its division and distribution; but before the net estate can be divided and pass through the toll-gate a toll must be paid to the national government. This toll is fixed and collected upon the assembled net estate considered as a unit, without regard to the different portions into which it is to be divided, and without regard to the different roads over which the several portions are to go

after passing through the toll-gate, and without regard to the destination of the different portions.

When the federal act of 1916, and its amendatory acts, and the act of 1919 are examined in the light of their history and are viewed in the light of the distinctions which have been so long observed between estate taxes on the one hand and inheritance taxes on the other hand, it is manifest that the federal tax is a pure estate tax and that it has none of the characteristics of an inheritance tax: *New York Trust Co.* v. *Eisner,* 254 U. S. —— (65 L. Ed. ——, 41 Sup. Ct. Rep. 506); *Plunkett* v. *Old Colony Trust Co.,* 233 Mass. 471 (124 N. E. 265, 7 A. L. R. 696); *In re Hamlin,* 226 N. Y. 407 (124 N. E. 701, 7 A. L. R. 701); *In re Roebling's Estate,* 89 N. J. Eq. 163 (104 Atl. 295); *Lederer* v. *Northern Trust Co.,* 262 Fed. 52; *New York Trust Co.* v. *Eisner,* 263 Fed. 620.

We now direct attention to our state inheritance tax statute which provides in Section 1191, Or. L., that:

"All property within the jurisdiction of the state, and any interest therein, * * which shall pass or vest by dower, curtesy, will, or by statutes or [of] inheritance, * * or by deed, grant, bargain, sale or gift, or as an advancement or division of his or her estate made in contemplation of the death * * to any person or persons, * * shall be and is subject to a tax at the rate hereinafter specified in Section 1192, to be paid to the treasurer of the state for the use of the state; * * ."

The title of the original statute enacted in 1903 explained the object of the enactment by declaring that it was "An act to tax gifts, legacies, and inheritances, and to provide for the collection of the same" (Gen. Laws 1903, p. 49), and, as pointed out by Mr.

101 Or.—13

Justice Benson in *Re Clark's Estate,* 100 Or. 20 (195 Pac. 370), the original object was never departed from but was preserved in all the amendatory legislation. It will be observed that Section 1191, Or. L., touches only property "which shall pass or vest." Our statute looks not to the estate or interest which was ended by death but to the estate or interest which was newly created by death. Plainly as ruled in *Re Clark's Estate,* 100 Or. 20 (195 Pac. 370), our statute provides for an inheritance tax and not for an estate tax.

1, 2. The doctrine accepted in this jurisdiction and in nearly all the other jurisdictions is that the right to dispose of property by will and the right to receive property by will or inheritance are not natural rights, but are the creatures of the law: *McDermid* v. *Bourhill,* post, p. —— (199 Pac. 610); *In re Macky's Estate,* 46 Colo. 79 (102 Pac. 1075, 23 L. R. A. (N. S.) 1207); *Magoun* v. *Illinois Trust & Savings Bank,* 170 U. S. 283 (42 L. Ed. 1037, 18 Sup. Ct. Rep. 594, see, also, Rose's U. S. Notes); *Maxwell* v. *Bugbee,* 250 U. S. 525, 536 (63 L. Ed. 1124, 40 Sup. Ct. Rep. 2); *State* v. *Alston,* 94 Tenn. 674 (30 S. W. 750, 28 L. R. A. 178). In this and in other jurisdictions, therefore, where it is held that the right to transmit property at death and the right of the living to receive property upon the death of another are creatures of the law, it is perfectly logical also to hold that the power which creates the right to transmit and the right to receive can tax such created rights and in fixing the amount of such tax can discriminate between relatives, distinguish between strangers and relatives, and grant exemptions: *Magoun* v. *Illinois Trust & Savings Bank,* 170 U. S. 283 (42 L. Ed.

1037, 18 Sup. Ct. Rep. 594); *Knowlton* v. *Moore,* 178 U. S. 41 (44 L. Ed. 969, 20 Sup. Ct. Rep. 747); *State ex rel.* v. *Cline,* 91 Kan. 416 (137 Pac. 932, 50 L. R. A. (N. S.) 991); *State* v. *Handlin,* 100 Ark. 175 (139 S. W. 1112); *People* v. *Palmer's Estate,* 25 Colo. App. 450 (139 Pac. 554); *McDaniel* v. *Brykett,* 120 Ark. 295 (179 S. W. 491); *Rodman* v. *Commonwealth,* 130 Ky. 88 (113 S. W. 61, 33 L. R. A. (N. S.) 592); *In re Corbin's Estate,* 107 Wash. 424 (181 Pac. 910, 7 A. L. R. 685); *Kochersperger* v. *Drake,* 167 Ill. 122 (41 L. R. A. 446, 47 N. E. 321), *In re Roebling's Estate,* 89 N. J. Eq. 163 (104 Atl. 295); *In re Macky's Estate,* 46 Colo. 79 (102 Pac. 1075, 23 L. R. A. (N. S.) 1207); *In re Miller's Estate* (Cal.), 195 Pac. 413; Blakemore and Bancroft on Inheritance Taxes, p. 7; Gleason & Otis on Inheritance Taxation (2 ed.), p. 7. However, even in the few jurisdictions where it is held that the right to take property by will or inheritance is a natural right which cannot be taken away by the legislature, it is ruled that an inheritance tax may be lawfully imposed under the power to make reasonable regulations for the devolution of property upon the death of the owner: *State ex rel.* v. *Cline,* 91 Kan. 416 (137 Pac. 932, 50 L. R. A. (N. S.) 991).

3, 4. A death duty, whether it be an estate duty or whether it be an inheritance tax, is neither a direct tax upon property nor a capitation tax: *Scholey* v. *Rew,* 23 Wall. 331 (23 L. Ed. 99, see, also, Rose's U. S. Notes); *Magoun* v. *Illinois Trust & Savings Bank,* 170 U. S. 283 (42 L. Ed. 1037, 18 Sup. Ct. Rep. 597); *Knowlton* v. *Moore,* 178 U. S. 41 (44 L. Ed. 969, 20 Sup. Ct. Rep. 747); *New York Trust Co.* v. *Eisner* 254 U. S. —— (65 L. Ed. ——,

41 Sup. Ct. Rep. 506). Nor is such a tax necessarily made a direct tax on property merely because the statute provides for a lien upon property and requires payment by the executor or administrator, as such provisions are nothing more than appropriate regulations to secure the collection of the tax: *Scholey* v. *Rew,* 23 Wall. 331 (23 L. Ed. 99). Although in our state statute, as in many inheritance tax statutes, language may be found referring to "the rates of tax on all estates," and "taxes levied on such estate," and the like, this language does not of itself make the tax a direct property tax. The value of the property is used merely as a measure of the amount of the tax to be paid, and the property is then looked to for the purpose of insuring payment, just as in a multitude of instances property is looked to for the purpose of insuring payment of debts due private persons, as, for example, money judgments. If, then, the tax is not imposed directly upon property: Upon what is the tax imposed?

The devolution of property by death involves a transferrer, a transfer of property and a transferee. A valid transfer of property cannot be effected unless the transferrer has a right to transfer it and the transferee has a right to receive it. A death duty is not a capitation tax; and, hence, it is not laid upon the transferrer; nor is it laid upon the transferee. A death duty is not a direct property tax; and, hence, it is not laid upon the property. It must be then that death duties are laid upon the right to transmit, or the transfer, or the right to receive.

5. Death duties are in reality excises or imposts upon the right to transmit property at death; or

upon the right to succeed to it from the dead: Gleason & Otis on Inheritance Taxation (2 ed.), p. 7; *State* v. *Handlin*, 100 Ark. 175 (139 S. W. 1112); *State ex rel.* v. *Cline*, 91 Kan. 416 (137 Pac. 932, 50 L. R. A. (N. S.) 491); *Knowlton* v. *Moore*, 178 U. S. 41, 81 (44 L. Ed. 969, 20 Sup. Ct. Rep. 747).

6, 7. The federal statutes, both the act of 1916 and that of 1919, in terms declare that a tax is imposed "upon the transfer of the net estate of every decedent." The tax is measured by the net value of the entire estate as it is assembled in a single unit and before it is broken up into parts for distribution. The federal tax attaches to the whole estate and it is an excise upon the transmission at its very beginning; but inextricably connected with the transfer at its beginning is the right to transmit; and therefore the federal tax is on the right to transmit or upon the transfer at its beginning, and not upon the right to receive; for the estate has not yet been divided and so it has not yet passed to or reached the several points where the rights of heirs, distributees, legatees and devisees to receive attach. A tax "on the transfer" is substantially a tax on the power to transmit: *New York Trust Co.* v. *Eisner* (U. S.) (65 L. Ed. ——, 41 Sup. Ct. Rep. 506); *People* v. *Bemis*, 68 Colo. 48 (189 Pac. 32); *In re Inheritance Tax, Macky's Estate*, 46 Colo. 79, 89 (102 Pac. 1075, 23 L. R. A. (N. S.) 1207); *In re Roebling's Estate*, 89 N. J. Eq. 163, 168 (104 Atl. 295); *United States* v. *Perkins*, 163 U. S. 625, 628 (41 L. Ed. 287, 16 Sup. Ct. Rep. 1073). At any rate a tax which looks to an old interest in property ended by death and not to a new interest created by death is devoid of any suggestion that it is a tax on the right to receive.

The constitutionality of a federal inheritance tax is determined in *Knowlton* v. *Moore,* 178 U. S. 41 (44 L. Ed. 969, 20 Sup. Ct. Rep. 747); and the constitutionality of a federal estate tax is established in *New York Trust Co.* v. *Eisner* (U. S.) (65 L. Ed. ——, 41 Sup. Ct. Rep. 506); and therefore, the constitutionality of death duties imposed by federal statutes can no longer be the subject of controversy. In the absence of · some special constitutional provision to the contrary there can be no doubt about the power of a state legislature to levy inheritance taxes: 26 R. C. L. 198.

It has been said that an inheritance tax is laid upon the receipt of property; and again it has been suggested that the tax is imposed upon the exercise of the right to receive; but the commonly accepted theory is that the tax is imposed upon the right to receive. This right to receive which is taxed is the right as it exists in concrete form, as where it is ripened, and not as it exists in the abstract, as where it is no more than a mere possibility. All citizens have the abstract right to receive property from the dead; but all citizens do not receive property from the dead. A tax is not laid upon the abstract right to receive property from the dead given to every citizen; but the tax is laid only where the right to receive has been transformed from an abstract right into a concrete right and property is actually transmitted from the dead: *Magoun* v. *Illinois Trust & Savings Bank,* 170 U. S. 283, 288 (42 L. Ed. 1037, 18 Sup. Ct. Rep. 594); *Knowlton* v. *Moore,* 178 U. S. 41, 54 (44 L. Ed. 969, 20 Sup. Ct. Rep. 747); *Maxwell* v. *Bugbee,* 250 U. S. 525, 536 (63 L. Ed. 1124, 40 Sup. Ct. Rep. 2); *State ex rel.* v. *Cline,* 91 Kan. 416 (50 L. R. A. (N. S.) 991, 137 Pac. 932);

*In re Sanford's Estate* (Iowa), 175 N. W. 506, 509; *State* v. *Handlin,* 100 Ark. 175, 179 (139 S. W. 1112); *People* v. *Palmer's Estate,* 25 Colo. App. 450 (139 Pac. 554); *McDaniel* v. *Brykett,* 120 Ark. 295 (179 S. W. 491); *Booth's Exrs.* v. *Commonwealth,* 130 Ky. 88 (113 S. W. 61, 33 L. R. A. (N. S.) 582); *In re Corbin's Estate,* 107 Wash. 424 (181 Pac. 910, 7 A. L. R. 685); *Kochersperger* v. *Drake,* 167 Ill. 122 (41 L. R. A. 446, 47 N. E. 321); *In re Roebling's Estate,* 89 N. J. Eq. 163 (104 Atl. 293); *In re Inheritance Tax, Macky's Estate,* 46 Colo. 79 (102 Pac. 1075, 23 L. R. A. (N. S.) 1207); *In re Miller's Estate* (Cal.), 195 Pac. 413; *State* v. *District Court,* 45 Mont. 335 (122 Pac. 922, Ann. Cas. 1914A, 468); Blakemore and Bancroft on Inheritance Taxes, p. 7; Gleason & Otis on Inheritance Taxation (2 ed.), p. 7.

Although, as previously explained, language may be found in our inheritance tax act, as in most of the inheritance tax statutes, such as "tax on all estates," "taxes levied on such estates," property "shall be subject to a tax," and the like, yet our statute when considered in its entirety provides for a tax which is plainly and indisputably a perfect example of an inheritance tax. The tax is on the right to receive; but the amount of the tax so laid upon such right is measured by the value of the property to which the right attaches. The language of our statute is "all property * * which shall pass" to "or vest" in a given person "is subject to a tax at the rate hereinafter specified." The measure of the tax is, then, the value of the property which passes to or vests in a given person. The value of the property received is one of the determining factors in the measurement of the amount

of the tax. It is true that the executor or adminis-
trator is required to pay the tax, but the payment
is nevertheless based upon the value of the interest
which the successor is entitled to receive and which
in contemplation of law he has received.

No part of the federal estate tax amounting to
$25,067.36 ever passed, theoretically or actually, to
the widow or daughters; for this tax was imposed
and collected before distribution, and like the old
probate tax ought to be deducted from the gross es-
tate just as expenses of administration are deducted.
The share received by an heir, distributee, legatee
or devisee is in the final analysis the unit by which
to determine the amount of the inheritance tax.
This idea is illustrated throughout the different sec-
tions of our statute; as, for example, in Section
1196 it is declared that—

"Every tax imposed by this act shall be a lien
upon the property embraced in any inheritance, de-
vise, bequest, legacy or gift, until paid, and the per-
son to whom such property is transferred, and the
administrators, executors and trustee of every es-
tate embracing such property shall be personally
liable for such tax until its payment, to the extent
of the value of such property; * * ."

The federal estate tax, or the tax upon the right
to transmit, is in the final analysis measured by the
net value of the old interest which ceased with
death; while the inheritance taxes, or the tax upon
the right to receive, are measured respectively by
the values of the several new interests which were
created by death. The federal estate tax is taken
from the net estate "before the distributive shares
are determined rather than off the distributive
shares": *Corbin* v. *Townshend,* 92 Conn. 501 (103
Atl. 647). The federal estate tax paid to the na-

tional government by the executors reduced the value of the property which passed to the legatees and devisees to the extent of such payment; and, hence, when the widow and daughters were required to pay an inheritance tax on any part of the amount of the federal estate tax they were required to pay a tax on property which never passed to them.

Cases dealing with the question of deductibility where the only statutes involved were the inheritance tax statutes of two states or the national inheritance tax act of 1898 and a state inheritance tax statute are not in point; for the reason that in these cases the taxes considered are exactly alike as to their nature and incidence. The current of judicial opinion is divided upon the question of deductibility where property is subject to one or more inheritance tax statutes; but we need not now inquire which of the two views is the more logical, because we are now dealing with two taxes which have different points of incidence and are different in some other respects: See Blakemore and Bancroft on Inheritance Taxes, § 371. There are a few precedents which might at first blush seem to give support to the contention that the federal estate tax is not deductible; and yet on a careful examination it will be discovered that they turn upon the peculiar language of the statutes involved. Among such precedents are: *Estate of Week,* 169 Wis. 316 (172 N. W. 732); *In re Sanford's Estate* (Iowa), 175 N. W. 506. A few adjudications holding that the federal estate tax is not deductible reach that conclusion by applying the reasoning employed by precedents which have ruled against deductibility where the statutes involved were a state inheritance tax statute and the national inheritance tax act of 1898 (see *In re*

*Bierstadt's Estate,* 178 App. Div. 836 (166 N. Y. Supp. 169); but, we repeat, such adjudications are not in point because they involve two taxes which are alike in language, and touch the same thing at the same time and at the same point: *In re Miller's Estate* (Cal), 195 Pac. 413. So far as we have been able to discover, every reported judicial opinion which recognizes and observes the well-defined and universally acknowledged distinction between an estate tax and an inheritance tax, is to the effect that the federal estate tax must be deducted before measuring the amount of the state inheritance tax, unless, however, some peculiar and unusual language appearing in the state statute controls and produces a different result: *Knight's Estate,* 261 Pa. St. 537, 539 (104 Atl. 765); *State ex rel.* v. *Probate Court,* 139 Minn. 210 (166 N. W. 125); *People* v. *Pasfield,* 284 Ill. 450 (120 N. E. 286, 287); *People* v. *Northern Trust Co.,* 289 Ill. 475, 477 (124 N. E. 662, 7 A. L. R. 709); *In re Roebling's Estate,* 89 N. J. Eq. 163 (104 Atl. 295); *Corbin* v. *Townshend,* 92 Conn. 501 (103 Atl. 647); *In re Miller's Estate* (Cal.), 195 Pac. 413; *State* v. *First Calumet Trust & Savings Bank* (Ind. App.), 125 N. E. 200. See, also, *New York Trust Co.* v. *Eisner* (U. S.) (65 L. Ed. ——, 41 Sup. Ct. Rep. 506).

The federal estate tax should have been deducted before measuring the amount of the state inheritance tax. The decree is therefore modified.

MODIFIED.

BENSON, J., not sitting.