Argued at Pendleton May 4, affirmed June 23, 1925.

## THOS. B. KAY, STATE TREASURER, v. F. L. MEYERS, ADMR.

(236 Pac. 1064.)

**Taxation—Deduction of Federal Estate Tax Before Computing State Inheritance Tax Held not Error.**

1. Deduction of federal estate tax before computing state inheritance tax, under Section 1191 et seq., Or. L., *held* not error, in view of Section 1295, and nature of such federal tax.

**Taxation—Deduction of Transfer Taxes, Paid to Sister States Before Computation of State Inheritance Tax, Held Proper.**

2. Deduction of transfer taxes, paid to sister states with respect to shares of corporate stock in such states, before computation of state inheritance tax under Section 1191 et seq., Or. L., *held* proper.

---

1. Construction of inheritance tax statute to avoid double taxation, see note in Ann. Cas. 1914B, 691.

Deduction of federal estate tax before computing state tax, see notes in 7 A. L. R. 714; 16 A. L. R. 702; 23 A. L. R. 849. See, also, 26 R. C. L. 217.

2. Deduction of succession tax paid in other state when computing local tax, see note in 23 A. L. R. 852.

Taxation—Charging Inheritance Tax With Six Per Cent Interest from
   Due Date to Date of Settlement of Claims and Litigation,
   Thenceforward at Eight Per Cent, Held Proper.

   3.   Charging inheritance tax with six per cent interest from date
it became due to date of settlement of claims and litigation which
might have entirely consumed the estate, and from such date at
eight per cent, *held* proper under Section 1197, Or. L.

---

   See (1) 37 **Cyc.** 1582 (1926 Anno.).   (2) 37 **Cyc.** 1582.   (3) 37
**Cyc.** 1575.

From Union: J. W. KNOWLES, Judge.

   In Banc.

'AFFIRMED.

For appellant there was a brief over the names
of *Mr. I. H. Van Winkle,* Attorney General, and *Mr.
Frank S. Sever,* with an oral argument by *Mr. Sever.*

For respondent there was a brief over the names
of *Mr. Robert S. Eakin,* for the administrator, and
*Mr. C. T. Haas* and *Messrs. Cochran & Eberhard,*
for the heirs, with oral arguments by *Mr. Eakin, Mr.
Haas* and *Mr. George T. Cochran.*

BURNETT, J.—Henry F. Perkins, a resident of
Union County, Oregon, died September 9, 1923, leav-
ing an estate composed partly of property in Oregon
and partly of shares of stock in corporations or-
ganized and existing under the laws of the States of
New York, Missouri, Indiana, New Jersey, Minnesota
and Illinois.   Pending the settlement of the estate,
the plaintiff, State Treasurer, applied to the County
Court of Union County to determine the inheritance
tax due to the state under Section 1191 et seq.,
Or. L.   In his petition he concedes that the follow-
ing deductions should be made before computing the
tax:

---

3.   See 26 **R. C. L.** 386.

Federal estate tax ......................$11,463.93
Federal income tax due the date of decedent's death ...................... 881.88
Oregon State Income Tax .............. 828.73
Miscellaneous claims ................... 74.26
Sums paid in settlement of damage claims against said estate .................. 10,750.00
Court costs and expenses of administration 3,822.07
Administrator's fee ...................... 10,375.00
Attorney's fee .......................... 15,000.00
Funeral charges ........................ 2,495.53

Total ..............................$55,664.40

The parties are agreed that the estate was valued at $479,147 gross. The administrator avows that the deduction should be made as already noted, but alleges that in order to secure the transfer of certificates of stock in the corporations above mentioned in the sister states he was compelled to and did pay transfer taxes levied there amounting in the aggregate to $14,696.78, and he contends that this amount should also be deducted and that the computation of inheritance tax should be made on the resulting net value of $408,785.82. There was also a dispute about the dates from which interest should be calculated. The administrator avers that there were sundry claims against the decedent for damages growing out of injuries arising from an automobile accident; that considerable litigation arose in that matter and that the claims were not settled until about October 27, 1924, when the amount to be paid was fixed at $10,750, whereas if they had been allowed in full there would have been no estate upon which an inheritance tax could have been levied. There were findings and a decree favorable to the defendant administrator and the plaintiff appeals.

It is said in Section 1191, Or. L., that:

"All property within the jurisdiction of the state, and any interest therein, whether belonging to the inhabitants of this state or not, and whether tangible or intangible, which shall pass or vest * * by statutes or inheritance of this or any other state * * shall be and is subject to a tax at the rate hereinafter specified in Section 1192, to be paid to the treasurer of the state for the use of the state."

Section 1192, Or. L., provides in substance that after deducting an exemption of $10,000 there shall be certain rates charged upon an estate whatever which shall be in full for any inheritance tax upon property passing to a husband, wife or any lineal descendants or ascendants of the decedent A further paragraph in that section provides for a rate of taxation in addition to that already stated where the property goes to collateral kindred. Section 1193, Or. L., provides:

"All taxes imposed by this act shall take effect at and accrue upon the death of the decedent, or donor, and shall be due and payable at the expiration of eight months from such death, except as otherwise provided in this act."

The remainder of the section has reference to devises, bequests, legacies and the like which are limited, conditioned, dependent or determinable upon the happening of any contingency or future event, on account of which the true value thereof cannot be ascertained before the tax has become due. This last proviso has no reference to the case in hand because it is one of intestacy.

As to interest, it is provided in Section 1197, Or. L., that if the tax is paid within eight months from the accruing thereof, a discount of five per cent shall be deducted therefrom.

"If such tax is not paid within eight months from the accruing thereof, interest shall be charged and collected thereon at the rate of eight per centum per annum from the time the tax is due and payable, unless by reason of claims upon the estate, necessary litigation, or other unavoidable delay, such tax cannot be determined and paid as herein provided, in which case interest at the rate of six per centum per annum shall be charged upon such tax from the time from the accruing thereof until the cause of such delay is removed, after which eight per centum shall be charged."

The matters at issue between the parties are two: 1. Whether the amount paid as transfer taxes in the other states should be deducted from the estate here; and 2. The matter of computation of interest. The Circuit Court determined that the transfer taxes in the other states should be deducted; that the interest should be computed at the rate of 6 per cent from May 6, 1924, that being eight months after the death of the decedent, until October 27, 1924, when the claims were settled, and that the rate from that time forward should be eight per cent.

There have been many decisions in various courts of the country on the subject of the computation of inheritance taxes, but in our judgment the questions here involved are set at rest by an opinion of the Supreme Court of the United States delivered June 1, 1925, in the case of *Frick* v. *Commonwealth of Pennsylvania* (U. S.), 69 L. Ed. 692, 45 Sup. Ct. Rep. 603, not yet officially reported. In that case Henry C. Frick lived in Pennsylvania and died there, testate, December 2, 1919. He had real and personal property in Pennsylvania. He likewise had tangible real and personal property situated in the States of New York and Massachusetts. Besides all these possessions, he had shares of stock in corpora-

tions in several states outside of Pennsylvania. The question there, as here, was: What deduction should be made? The court determined that the tangible property actually situated in the other states was not to be considered in computing the inheritance tax in Pennsylvania because the latter state had no jurisdiction beyond its boundaries and could not tax such property. Speaking of the shares of stock in the corporations of other states and the fact that their transfer was subject by the laws of those states to a tax, the court said:

"As those states had created the corporations issuing the stocks, they had power to impose the tax and to enforce it by such means, irrespective of the decedent's domicil and the actual *situs* of the stock certificates. Pennsylvania's jurisdiction over the stocks necessarily was subordinate to that power. Therefore to bring them into the administration in that State it was essential that the tax be paid. The executors paid it out of moneys forming part of the estate in Pennsylvania and the stocks were thereby brought into the administration there. We think it plain that such value as the stocks had in excess of the tax is all that could be regarded as within the range of Pennsylvania's taxing power. *Estate of Henry Miller,* 184 Cal. 674, 683. So much of the value as was required to release the superior claim of the other States was quite beyond Pennsylvania's control. Thus the inclusion of the full value in the computation on which that State based its tax, without any deduction for the tax paid to the other States, was nothing short of applying that State's taxing power to what was not within its range. That the stocks, with their full value, were ultimately brought into the administration in that State does not help. They were brought in through the payment of the tax in the other States out of moneys of the estate in Pennsylvania. The moneys paid out just balanced the excess in stock value brought in. Yet in computing the tax in that State both were included.

"We are of opinion that in so far as the statute requires that stocks of other States be included at their full value, without deducting the tax paid to those States, it exceeds the power of the State and thereby infringes the constitutional guaranty of due process of law."

1. The court there held, indeed, in speaking of the federal tax, that it should not be deducted any more than the state taxes on the property of the estate, but the reason given was that no distinction could be made between the two classes of tax because each sovereignty, that of the general government and that of the state, had the concurrent right to tax the same property and that no distinction could be made on any ground involved in that case. The court said:

"Subject to exceptions not material here, the power of taxation granted to the United States does not curtail or interfere with the taxing power of the several states."

In view of this last excerpt from the opinion of the court, there was no error, and none is assigned for that matter, in the deduction of the federal tax in the instant case. In the first place, it is agreed in the pleadings that the federal tax should be taken out. It is so ruled likewise in *In re Inman's Estate,* 101 Or. 182 (199 Pac. 615, 16 A. L. R. 675). Mr. Justice HARRIS, exhausting the subject with his usual acumen, held that the federal tax was an estate tax levied upon the holdings of the decedent as distinguished from the inheritance tax mentioned in our statute which is imposed upon the several amounts descending or devised to the heirs or legatees. The following excerpts from the opinion are here set down:

"The measure of the tax is, then, the value of the property which passes to or vests in a given per-

son. The value of the property received is one of the determining factors in the measurement of the amount of the tax. It is true that the executor or administrator is required to pay the tax, but the payment is nevertheless based upon the value of the interest which the successor is entitled to receive and which in contemplation of law he has received.

"No part of the federal estate tax * * ever passed, theoretically or actually, to the widow or daughters; for this tax was imposed and collected before distribution, and like the old probate tax ought to be deducted."

2. The opinion in the Inman Estate case likens the matter to an erection of a toll-gate by the federal government through which all estates must pass, and before proceeding on its way to distribution to those entitled to it, an estate tax must be paid. The inheritance tax, whatever the same may be or however computed, is adjusted after the estate has passed this toll-gate. The Inman case held that the federal estate tax should have been deducted before measuring the amount of the state inheritance tax. The reason given was that the former attached to the whole estate while the latter was imposed only upon the distributive shares. In other words, the points of incidence of the two taxes were different. The federal tax fell earlier in the process of devolution, had precedence in point of time and hence must first be deducted. By a parity of reasoning in the instant case, the levies of our sister states upon the portion of the property within their jurisdictions, and not in ours, operated as conditions precedent to the acquisition of authority over it by the Oregon court. The result is that those taxes necessarily had precedence, had to be paid first and must be deducted before proceeding to compute the Oregon tax on "property which shall pass" to the heirs of the decedent.

Another reason for taking out the federal tax before distribution is found in Section 1295, Or. L., prescribing the order of payment of claims and charges against an estate, which is this:

"1. Funeral charges;

"2. Taxes of whatever nature due the United States;

"3. Expenses of last sickness;

"4. Taxes of whatever nature due the state, or any county or other public corporation therein," etc.

The general government does not assume to interfere with local tax systems and hence the Inman case is controlling as to the deduction of the national tax. The decision of the Circuit Court was right on the subject of deductions in taking out the transfer taxes paid to the other states.

3. As stated, the decedent died September 9, 1923. The liability to inheritance tax attached at that time. By virtue of the statute it became due in eight months thereafter, namely, May 9, 1924. Under ordinary circumstances interest would begin to run at that date at the rate of 8 per cent per annum; but it is averred and in fact conceded that extensive litigation was planned and was pending against the estate which might have entirely consumed it. Hence, though the estate was liable for the inheritance tax, the amount could not be computed until the claims and litigation were settled, which occurred October 27, 1924. Until that date, however, under the statute mentioned, the rate was properly charged at 6 per cent and thenceforward at 8 per cent.

The decree of the Circuit Court is affirmed.

                                        AFFIRMED.

BROWN, J., took no part in the hearing or decision of this case.