The first question is whether any part of the burden of the New Jersey inheritance tax and the federal estate tax should be placed on two trusts established by testator in his lifetime. In case of intestacy, or where the will contains nothing to the contrary, the state tax, which is assessed against each transfer separately, is payable ultimately by the donees severally. R.S.54:34-1. Fidelity Union Trust Co. v. Hall, 125 N.J. Eq. 419
(at p. 430); Morristown Trust Co. v. Childs, 128 N.J. Eq. 524.
The apportionment of the burden of the federal tax is a matter which the states are free to regulate. Turner v. Cole,118 N.J. Eq. 497; Riggs v. Del Drago, 317 U.S. 95;63 S.Ct. 109. No statute on the subject has, however, been adopted in New Jersey. The federal statute requires the beneficiaries of life insurance policies and of the exercise of powers of appointment to contribute to the tax. Internal Rev. Code, § 826 (c) and (d). With these exceptions, neither of which touches the present case, the federal tax falls upon and diminishes the residuary estate, unless the will provides otherwise. Righter
v. Fidelity Union Trust Co., 110 N.J. Eq. 169; Turner v. Cole,supra.
To ascertain the testator's intention with respect to taxes, as in other cases of testamentary interpretation, the whole will is studied and evidence is received of the situation existing at the time the will was made. In the present case, little that is helpful appears beyond this clause in the will: "I direct * * * that all inheritance taxes be paid out of my residuary estate." In giving effect to such clauses, the rule has been developed that testator's express direction to pay out of residue a certain tax or part of tax impliedly requires that a different tax or another part of the tax be not paid out of residue but be charged on the property in respect to which it is levied. Fidelity UnionTrust Co. v. Suydam, 125 N.J. Eq. 458. This rule has been applied where the executor was instructed to pay the state or federal tax, or both, that may be assessed against "my estate" or "the share herein given," or "gifts herein made," or "the bequests or beneficiaries in my will named"; and it has been held that such limited directions impliedly relieved the residuary estate of so much of the tax *Page 9 
as was levied with respect to the title of testator's widow as tenant by the entirety or as surviving owner of a joint bank account; to property which was the subject of appointment under a power; to legacies given by codicil, or to inter vivos trusts.Gaede v. Carroll, 114 N.J. Eq. 524; Commercial Trust Co. v.Millard, 122 N.J. Eq. 290; Fidelity Union Trust Co. v. Suydam,supra; Rippel v. King, 126 N.J. Eq. 297; 128 N.J. Eq. 524;Morristown Trust Co. v. Childs, supra; Palmer v. Palmer,135 N.J. Eq. 516 (at p. 528); Commercial Trust Co. v. Thurber,136 N.J. Eq. 471; 137 N.J. Eq. 457; Phraner v. Stone, 137 N.J. Eq. 284.
On the other hand, in Hackensack Trust Co. v.Ackerman, 138 N.J. Eq. 244, a testamentary direction that "all inheritance, estate and other taxes shall be paid by my estate and not by the beneficiaries hereinafter named," was found sufficiently broad to cover so much of the tax as resulted from three inter vivos trusts which had been set up by testatrix in her lifetime and the executors were therefore not entitled to reimbursement from the trustees.
The tax clause in Mr. Spadone's will places upon the residuary estate "all inheritance taxes" without any limitations. When the will was made in 1911, there was no federal tax. The state tax, imposed by virtue of P.L. 1909 p. 325, was commonly called the collateral inheritance tax, the transfer tax, or the inheritance tax. The expression "inheritance taxes" which occurs in the will, was undoubtedly intended by the testator to include the New Jersey tax; but whether it embraces the federal tax is more doubtful. The course of federal taxation on the transmission or receipt of property occasioned by death, may be studied inKnowlton v. Moore, 178 U.S. 41; 20 S.Ct. 747; Re Inman
(Ore.), 199 Pac. Rep. 615; 16 A.L.R. 675, and28 Am. Jur. 10. Our Civil War tax statutes of 1862 and 1864 imposed taxes on legacies, distributive shares, succession to real estate, and a tax on the estate as a whole and which came out of the residue. The War Revenue Act of 1898, which levied what may be called a legacy tax, was repealed in 1902 and was the last national law on the subject in effect before the date of the will. The present federal tax system originated with the Act of Congress *Page 10 
of September 8th, 1916. As Vice-Chancellor Backes said, In reRoebling, 89 N.J. Eq. 163, "The sub-title of the act, `Estate Tax,' is significantly descriptive."
The term estate tax was not in common use when Mr. Spadone made his will or until after it appeared in the Act of 1916. Taxes of this nature were treated as late as 1920 in 26 R.C.L. 195 under the general title "Inheritance Taxes," and the text reads, "An inheritance tax, using the term in its broadest sense, is an excise which may be imposed on either, or both, of two entirely different subjects. It may be a tax upon the transmission of property by a deceased person, in which case it will be charged upon the whole estate, regardless of the manner in which it is to be distributed. Such a tax is called a probate duty, or estate tax. An inheritance tax in its common form is, however, an excise on the privilege of taking property by will or by inheritance or by succession in any other form upon the death of the owner, and in such case is imposed upon each legacy or distributive share of the estate as it is received. Such a tax is called a legacy or succession tax." Mr. Justice Swayze, in Bugbee v. Roebling,94 N.J. Law 438 (1920), referred more than once to the "federal inheritance tax," meaning the tax levied under the Act of 1916, and Judge Mack, in New York Trust Co. v. Eisner,263 Fed. Rep. 620, called the statute the Federal Inheritance Tax Act. Under the prevailing usage of 1911, inheritance tax was a general term for all the different species of tax which might be imposed upon death, and included what is nowadays commonly called an estate tax. It was in this wide sense that Mr. Spadone used the words in his will.
Mr. Spadone made three codicils to his will, February 28th, 1938, February 4th, 1939, and January 29th, 1940, each expressly ratifying his will, none of them mentioning taxes or containing any provisions that aid in the solution of the problem before me. The first of the inter vivos trusts was set up by Mr. Spadone in 1917, six years after he had signed his will. It reserved to the donor a power of amendment which he exercised on four occasions, 1921, 1935, February 4th, 1939, March 8th, 1939. It may be noted that the third amendment and the second codicil bear the same date. The *Page 11 
second trust was created October 16th, 1935. Testator died in 1945 aged eighty-eight years.
We must consider the bearing of the fact that the federal tax statute and the present New Jersey tax law were enacted, and bothinter vivos trusts were created, after the date of the will. The intention of the testator is sought with the aid of the situation existing when he made his will. Statutes then in force, or the absence of statutes, are a part of the situation. But the effect which the will produces depends upon the situation at testator's death. In re Wick, 120 N.J. Eq. 468. Common illustrations of provisions which speak as of his death, are a direction to pay "my just debts," a legacy to "my children," or a bequest of "all my personal property." A gift of "all moneys and securities in the City National Bank" means the moneys and securities there at testator's demise, for so he presumably intended. Harris v. Harris, 97 N.J. Eq. 190. Mr. Spadone's general intention was that all taxes occasioned by his death and falling within the term inheritance taxes, as he used the words, should be borne by the residuary estate. Whether the tax is imposed by the national government or the state, whether by a law in effect in 1911, or thereafter enacted, is immaterial to his design.
We may assume that testator in 1911 had in mind only relieving his particular legatees from the tax burden. His plan then was to dispose of his entire estate by will. Later, he decided to dispose of part of it by inter vivos trusts which he made in contemplation of death, or which took effect beneficially upon his death. No reason appears for discriminating between the legatees under the will and the beneficiaries under the trusts. The testamentary tax clause is sufficient to free both classes from the tax. Furthermore, the will was expressly ratified by codicil after both trusts were created by Mr. Spadone.
The executor will be instructed to pay all the taxes in question out of the residue.
A second question is presented. By the will, testator gave two-thirds of his residuary estate to complainant in trust to apply the income to the support and education of his children, "until the youngest of my children who is alive at my *Page 12 
death shall reach the age of twenty-one years or shall die under said age, when there shall be transferred and paid over to my issue then surviving, in equal shares, per stirpes, one-half of the principal of said fund; and the other half of said fund shall, in like manner, be held in trust (the income being meanwhile distributed as above provided) for a period of fifteen years thereafter or until the youngest of my children who is alive at the time fixed for said first distribution shall die before the expiration of said fifteen years;" and thereupon the remaining half of the fund shall be distributed among testator's issue per stirpes. Testator had but two children, Mrs. Manning and Mrs. Haviland, both of whom still survive. Since the younger, Mrs. Haviland, was twenty-eight years of age at her father's death, they became forthwith entitled to one-half of the trust fund. They contend that they, or their issue will become entitled to the other half when Mrs. Haviland shall reach the age of thirty-six years or sooner dies. I do not so interpret the will. The balance of the fund will be distributable fifteen years after the first half was payable, namely, after testator's death, unless Mrs. Haviland shall die in the meanwhile.